COMMONWEALTH vs. MICHAEL LOCKLEY.

Suffolk.   April 7, 1980. — July 17, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Evidence,* Polygraphic test, Photograph.  *Practice, Criminal,* Judicial
    discretion, Request for fees and costs, Location of defendant in court-
    room, Security measures in courtroom.

Where a judge failed to conduct a sufficient hearing on a defendant's mo-
    tion under G. L. c. 261, § 27C, for extra fees and costs to provide pay-
    ment for a polygraph examination of him, the defendant was entitled
    to a new trial and to an opportunity to renew his motion.  [158-164]
Although security measures may not call for seating a criminal defendant
    in the dock, a judge may seat the defendant elsewhere than at counsel
    table.  [164-165]
If mugshots of a defendant are to be introduced at trial, whether full face,
    profile, or both, they should be severed in addition to the cutting off or
    obliterating of identifying marks.  [165-166]


INDICTMENT found and returned in the Superior Court on
April 20, 1978.

Pretrial motions for a polygraph test and for awarding of
expenses therefor were heard by *Irwin,* J., and the case was
tried before *Prince,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*John P. Courtney* for the defendant.

*Michael J. Traft,* Assistant District Attorney *(David E.
Cherny* with him) for the Commonwealth.

QUIRICO, J.   On February 1, 1979, Michael Lockley was
convicted of the crime of robbing one Iwilla D. Thorn on
November 10, 1977, and was sentenced to five years and
one day at the Massachusetts Correctional Institution, Con-
cord.  He appeals under G. L. c. 278, §§ 33A-33H, and cites

as error (1) the denial of his pretrial motion that he be given a polygraph test to be performed at public expense; (2) the denial of his motion that he be permitted to sit at counsel table with his attorney during the trial; and (3) the admission in evidence of certain mugshot photographs of him from which Thorn had identified him. We reverse the conviction and order a new trial for reasons stated below.

The following is a summary of the evidence introduced at trial. On November 10, 1977, about 10:30 A.M., Thorn was walking down Wabon Street in Boston, carrying a large brown shoulder bag. She noticed a young man running toward her on the sidewalk, at first from a distance of somewhat less than a block. She watched him as he approached her, and observed that he was wearing a black topcoat, black cap, black pants, black shoes, and a red and white jersey. She had an opportunity to observe his face. He jogged slowly toward her, and as he reached her he bowed his head, "moaned something," and suddenly Thorn felt that her handbag was gone. She called for help and turned to watch the direction in which the man ran. A mailman who was nearby came to her assistance, and together they ran to an adjacent street where the mailman's car was parked. They then drove around the neighborhood looking for the robber, and saw him several streets away, this time carrying a gold umbrella which had been inside Thorn's handbag. As they started to get out of the car, the robber turned back and retreated down a nearby alley. When she saw the robber the second time he was as far from her, she testified, as the witness stand was from the rear of the court room. They continued to search for the robber, but without success.

Later that day Thorn called the police, and described her assailant to the police officers as a black male, somewhat taller than herself, about seventeen or eighteen years old, weighing about 140 pounds, with a thin build, black hair, and brown eyes, and wearing the clothing previously mentioned.

Two days after the incident, Thorn went to the District 2 police station to view some books of photographs. She looked

through one book, and selected a photograph of the defendant as the person who had snatched her bag. The photograph had been taken about three years before. She again described the person substantially as she had before. Three days later, she returned to the police station and viewed some more photographs. On this occasion she selected a more recent photograph of the defendant, taken a year before the crime. She also viewed a loose photograph of the defendant, which was the one she had first identified, and again identified it, but mistakenly stated at trial that the two pictures she viewed that day were the "same photo." She identified the defendant in person at the probable cause hearing and again at trial.

1. *Denial of the defendant's motions for polygraph test and for awarding of expenses therefor.* Before trial the defendant moved the court to order a polygraph examination of him, and further moved that the court allow payment of extra fees and costs under G. L. c. 261, § 27A, to provide for the cost of the examination. After a hearing on December 12, 1978, a judge of the Superior Court, who was not the judge who later presided at the trial, denied the motions. The defendant argues that this denial constitutes an abuse of discretion because the motion judge, before denying the motions, failed to apply the criteria established by this court in *Commonwealth* v. *A Juvenile,* 365 Mass. 421 (1974), and *Commonwealth* v. *Vitello,* 376 Mass. 426 (1978), and because, to the extent that the judge's ruling on the motion for a polygraph examination was influenced by the defendant's indigency, his actions constitute a violation of due process of law and equal protection of the laws, citing *Commonwealth* v. *Possehl,* 355 Mass. 575, 577 (1969).

The transcript of the hearing on the motions reveals that after a short introduction and brief argument by defense counsel, the judge denied them, stating that, "as I read the *Vitello* case I just don't see where courts in any way should authorize those examinations, as far as I am personally concerned." Defense counsel requested to be heard further, and stated that he believed that *Vitello* would support the

introduction of polygraph examination results as probative evidence at trial. The judge then pointed out the limited circumstances in which polygraphic evidence would be admissible, i.e., only as to the credibility of the defendant "in the event that the defendant creates the admissibility by taking the witness stand." The judge continued, asking rhetorically, "Are you suggesting then that the trial courts of this commonwealth, in view of that decision, are now compelled to provide every indigent defendant with a polygraph test based on the bare possibility that in the event that they pass it then they can use it to enhance their credibility at the trial, and in the event that they don't pass it then it is not admissible . . . [s]imply by their not taking the witness stand[?]" Defense counsel responded that the motion was addressed to the judge's discretion, and that it should be granted in the interest of fairness. The judge then stated that the "motion" was denied, without further comment. He did not file any written findings or conclusions concerning the motions.[1]

Section 27D of c. 261, as appearing in St. 1978, c. 478, § 269, provides a detailed and professedly exclusive procedure for taking an appeal from the denial of a request for fees and costs made under § 27C. The section states, "If the matter arises in the superior court, . . . the appeal shall be to the single justice of the appeals court at the next sitting thereof; . . . Upon being notified of the denial the applicant shall also be advised of his right of appeal, and he shall have seven days thereafter to file a notice of appeal . . . . The decision of the court hearing the appeal shall be final with respect to such request."

In the present case the defendant failed to take an appeal according to the procedure prescribed by statute. Ordinarily this failure would prevent him from raising the issue on

---

[1] As is noted in the text below, the defendant filed no appeal from the denial of the motion under G. L. c. 261, § 27D. Had such an appeal been taken, § 27C requires that "the court shall set forth its written findings and reasons justifying such denial, which document shall be part of the record on appeal."

this appeal. See, e.g., *Little* v. *Rosenthal,* 376 Mass. 573, 579 (1978). However, because there is no indication on the record that the motion judge informed the defendant of his right to appeal under the procedure established by § 27D, as that section requires, and because the issue raised requires the interpretation of a statute never before construed by this court, we proceed to undertake review of the defendant's contentions.

The standard for deciding whether a request for "extra fees and costs"[2] should be granted is set forth in G. L. c. 261, § 27C, as appearing in St. 1978, c. 478, § 269, which states that "[i]f the court makes a finding of indigency . . . it shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant as effective a prosecution or defense as he would have if he were financially able to pay." This standard is essentially one of reasonableness, and looks to whether a defendant who was able to pay and was paying the expenses himself, would consider the "document, service or object" sufficiently important that he would choose to obtain it in preparation for his trial. The test is not whether a particular item or service would be acquired by a defendant who had unlimited resources, nor is it whether the item might conceivably contribute some assistance to the defense or prosecution by the indigent person. On the other hand, it need not be shown that the addition of the particular item to the defense or prosecution would necessarily change the final outcome of the case. The test is whether the item is reasonably necessary to prevent the party from being subjected to a disadvantage in preparing or

---

[2] This term is defined as "the fees and costs, in addition to those a party is normally required to pay in order to prosecute or defend his case, which result when a party employs or responds to a procedure not necessarily required in the particular type of proceeding in which he is involved. They shall include, but not necessarily be limited to, the following: fees and costs for the issuance or service of a subpoena, witnesses' fees, expert assistance and appeal bond premiums." G. L. c. 261, § 27A, inserted by St. 1974, c. 694, § 3.

presenting his case adequately, in comparison with one who could afford to pay for the preparation which the case reasonably requires.

In making this determination under the statute, the judge may look at such factors as the cost of the item requested, the uses to which it may be put at trial, and the potential value of the item to the litigant. The statute states that "[t]he court shall not deny any request without first holding a hearing thereon." At such a hearing evidence may be introduced as to these factors and to such other factors as the judge may deem relevant to his determination of the request before him.

We do not reach the question whether the judge applied the standard set by c. 261, § 27C, in a clearly erroneous manner, for we hold that he did not conduct a sufficient hearing on the matter before making his determination. Counsel for the defendant stated that the defendant was indigent and that he wished to take a polygraph examination. He submitted the required affidavit of indigency, as well as his two motions. The judge made no initial finding on the question of indigency, and did not inquire of or discuss with counsel the desirability or necessity of polygraphic evidence in the instant case. Rather, he merely stated, in effect as if a matter of law, that the purposes for which polygraphic evidence could be used at trial were too limited, after the *Vitello* decision, ever to justify the expenditure of public funds for such a test of an indigent defendant. His ensuing discussion with counsel was directed solely to this point.

The cases of *Commonwealth* v. *A Juvenile*, 365 Mass. 421 (1974), and *Commonwealth* v. *Vitello*, 376 Mass. 426 (1978), together recognized that the possible value of polygraphic evidence, in certain limited circumstances, was sufficient to warrant the modification of the prior total ban on the admissibility of the results of polygraph examinations. *Vitello* defines the circumstance in which polygraphic evidence is admissible: that is, after a defendant has testified, such evidence may be admitted as probative of his credibility. The *Vitello* case involved an indigent defendant whose

pretrial motion to take a polygraph examination at the expense of the Commonwealth was allowed, but the opinion dealt with the utility of polygraphy as an evidentiary matter irrespective of indigency. The court stated that it did "not think it wise to bar the polygraph completely from the judicial arena," and accordingly, permitted "limited and controlled" admissibility of such evidence. *Vitello, supra* at 453. We noted that allowing polygraphic evidence favorable to the defendant would encourage him to testify despite the handicap of a criminal record, on the theory that the test results might offset "the prejudicial impact of his criminal history." *Id.* at 455. Providing this encouragement, we stated, would significantly increase "the capacity of the trial process to determine the truth," and enhance the perception of the fairness and justice of trials. *Id.* In *Commonwealth* v. *Moynihan*, 376 Mass. 468, 477-479 (1978), decided the same day as *Vitello*, we upheld the use of favorable polygraph test results by a defendant to bolster his credibility. In that case the defendant was also indigent and his pretrial motion for expenses for a polygraph examination had been granted, although again this aspect of the case was not addressed in the opinion.

On the record before us, we cannot say as a matter of law that polygraphic evidence does or does not meet the standard of § 27C. Cf. *United States* v. *Penick*, 496 F.2d 1105, 1109-1110 (7th Cir.), cert. denied, 419 U.S. 897 (1974) (applying 18 U.S.C. § 3006A [e] [2]). Such a determination should be made in each individual case on a reasoned and careful application of the statutory standards by the judge hearing a motion under G. L. c. 261, § 27C for the allowance of extra costs and fees.[3] Cf. *State* v. *Acosta*, 41 Or. App. 257 (1979); *State* v. *Martinez*, 90 N.M. 595 (Ct. App. 1977).

---

[3] It may be appropriate to observe that the accessibility of polygraph examinations to indigent defendants is another of the questions relating to the use of polygraphic evidence which a study of that general subject might be able to consider more broadly than is possible on the limited record in the present case. See *Commonwealth* v. *A Juvenile*, 365 Mass. 421, 441-451, 452-453 (1974) (Quirico, J., dissenting) (Kaplan, J., dissent-

In considering whether, in a particular case, a polygraph test would fall within the category of services "reasonably necessary" to a defense "as effective" as one which would be presented by a defendant with adequate resources, G. L. c. 261, § 27C, a judge may consider among other factors: (1) the cost of the test; (2) whether the requirements of admissibility of polygraphic evidence set forth in *Vitello* have been satisfied; (3) the limited use to which polygraphic evidence may be put at trial; (4) whether the defendant has a criminal record which might deter him from testifying; and (5) the possibility that the test might work to the defendant's disadvantage in the event that it produces a result unfavorable to him but he nonetheless wishes to testify on his own behalf.

We are left with the question of how best to provide a due consideration of this matter to the defendant in the present case. While it would be possible to remand the case for a hearing on the question whether a polygraph examination was "reasonably necessary" in the circumstances presented here we are concerned about the possibility that the decision on the motion upon remand might be questioned as having been unduly influenced by the fact of the defendant's conviction. We note several factors which support the defendant's request for relief. They are the following: (1) the defendant initially indicated that he would present an alibi defense, but at trial he retracted from this approach; (2) the defendant, who had a long criminal record, did not testify at trial; (3) the sole evidence linking the defendant to the crime was the eyewitness identification of him by the victim; (4) the jury apparently experienced some difficulty in deciding the case, and at one point announced to the judge that they could not reach agreement. The presentation of evidence in the case took less than two trial days. For all of the reasons discussed above, we reverse the conviction and order a new

ing); *Commonwealth* v. *Vitello*, 376 Mass. 426 (1978), 461-464 (Quirico, J., concurring), 464-465 (Kaplan, J., concurring). See generally *People* v. *Barbara*, 400 Mich. 352 (1977).

trial, in advance of which the defendant may renew his motion for expenses for a polygraph examination.

In light of our disposition of this issue on a statutory basis, we need not consider the defendant's argument that the actions of the motion judge in denying the motions deprived him of his constitutional rights to equal protection of the laws, due process, effective assistance of counsel, and compulsory process. Cf. *Blazo* v. *Superior Court*, 366 Mass. 141 (1974) (case tried before passage of § 27C, requiring indigent to show need for stenographic assistance and summoning of witnesses).

As the remaining issues argued by the defendant raise substantial questions which may arise again at a new trial, we proceed to consider them.

2. *Denial of the defendant's motion to sit at counsel table during the trial.* The defendant's trial commenced immediately after the conclusion of a three-day hearing on his motion to suppress identification testimony and the denial of that motion. No issue is raised on this appeal concerning the denial of that motion. Prior to the commencement of the hearing on the motion, defense counsel moved the court to permit the defendant to sit at the counsel table. Counsel argued that seating the defendant in the dock would interfere with the effective assistance of counsel, and would give rise to an inference of guilt, adverse to the presumption of innocence. The judge, noting that the defendant was then serving a sentence at the Suffolk County house of correction on an unrelated offense, denied the motion. The defendant remained seated in the dock during the trial.

We note several cases on this subject which were decided after the trial in the present case. In *Commonwealth* v. *Moore*, 379 Mass. 106, 107-111 (1979), this court noted that in view of *Walker* v. *Butterworth*, 599 F.2d 1074 (1st Cir. 1979), "the use of the dock must be reconsidered," and went on to state that "[o]rdinarily, a criminal defendant should be permitted to sit at counsel table," but that "the dock has served and may continue to serve a valid function in those cases where some form of restraint is necessary to

prevent escape or to protect others in the court room." *Moore, supra* at 110. We concluded that, "[f]or the future, we think that a judge confronted with a request that the defendant be permitted to sit at counsel table should not deny the request unless he follows the 'more circumspect procedure' we have prescribed for unusual security measures." *Id.* at 111.

To the discussion in *Moore, supra,* we add that seating the defendant at counsel table or in the dock are not the only two options available to trial judges. There may be occasions where, although the need for security measures does not call for seating the defendant in the dock, the judge may wish to seat the defendant elsewhere than at counsel table — for example, on a chair or bench at the rear of the enclosure in front of the bar. Such seating would not tend to "dilute the presumption of innocence," *Walker* v. *Butterworth, supra* at 1081, and is permissible in the discretion of the judge. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 697-698 & n.14 (1979); *Commonwealth* v. *Brown,* 364 Mass. 471 (1973).

Upon a retrial of the present case, the judge should follow the procedures indicated in the *Moore* and *Brown* cases, *supra,* to determine whether unusual security measures are needed, and should proceed accordingly.

3. *Admission of "mugshots" of the defendant.* At trial, after Thorn testified as described above, the Commonwealth called as witnesses two police detectives who had been present on the two occasions when Thorn identified photographs of the defendant. Through them the Commonwealth sought to introduce the two sets of mugshots of the defendant which Thorn had identified. The judge permitted the mugshots to be admitted in evidence after requiring them to be "sanitized" by cutting off the identifying police numbers and date. The judge denied the defendant's request that the pictures be further sanitized by severing the front and side view photographs from each other and excluding the side view likenesses.

We adhere to the belief, expressed recently in *Commonwealth* v. *Rodriguez,* 378 Mass. 296, 309 (1979), that if

reasonably possible the introduction of police mugshots in evidence should be done in a manner which does not call attention to the source from which they came, and that they should not imply that the defendant has a criminal record. See *Commonwealth* v. *Cobb*, 374 Mass. 514, 522-523 (1978); *Commonwealth* v. *Gerald*, 356 Mass. 386, 387-388 (1969). In the present case it would have been apparent to the jury, from the facts surrounding the identification, that the police possessed a picture of the defendant before the incident in question. The jurors might well have inferred from this alone that the defendant had had a prior brush with the law. Cf. *Commonwealth* v. *Whitehead*, 379 Mass. 640, 659-660 (1980). Still, the more enlightened rule requires that reasonable steps be taken with reference to police photographs to eliminate the chance that the jury might draw an inference that the defendant has a prior criminal record. *Commonwealth* v. *Rodriguez, supra,* citing *United States* v. *Fosher*, 568 F.2d 207 (1st Cir. 1978). See 30 A.L.R.3d 908 (1970 & Supp. 1979). We think that if the photographs, whether full face, profile, or both, are to be introduced at a new trial, they should be severed, in addition to the cutting off or obliterating of identifying marks. See *Commonwealth* v. *Whitehead, supra.*

*Judgment reversed.*

*Verdict set aside.*