COMMONWEALTH vs. FRANK A. BOLDUC.

Suffolk.    September 9, 1980. — October 22, 1980.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Practice, Criminal,* Request for fees and costs, Location of defendant in court room, Judicial discretion.

Where a judge denied an indigent defendant's pretrial motion for the cost of expert testimony to interpret the results of a test conducted by a police department criminalist for gunpowder residue on a jacket alleged to have been worn by the defendant during a shootout, but made no findings of fact, gave no express statement of the reasons for his ruling, and failed to advise the defendant of his right to appeal the ruling under G. L. c. 261, § 27D, as appearing in St. 1978, c. 478, § 269, and where the expert testimony would have been relevant to the identity of the defendant as one of the participants in the shootout, the defendant was, in all the circumstances, entitled to a new trial, in advance of which he might renew his motion before a different judge. [635-639]

No abuse of discretion was shown by a judge's refusal to permit the defendant, who was seated at counsel table, to sit elsewhere in the courtroom during a pretrial hearing on a motion to suppress identification testimony.  [639]

INDICTMENTS found and returned in the Superior Court Department on September 14, 1978.

Pretrial motions were heard by *Alberti,* J., and the cases were tried before *Linscott,* J.

*Robert L. Sheketoff (Norman S. Zalkind* with him) for the defendant.

*Stephen M. Needle,* Assistant District Attorney, for the Commonwealth.

GRANT, J.    During the evening of August 27, 1978, the Boston police interrupted a holdup of a restaurant in the

Dorchester district of Boston. A "chaotic"[1] shootout ensued which ended with the capture of two of the participants in the holdup[2] and the wounding of the third participant, who escaped from the scene. A description of the third participant was broadcast over the Boston police radio, and the defendant Bolduc (defendant) was arrested later the same evening by an officer of the Metropolitan police who had heard the radio broadcast and who discovered the defendant in a nearby parking lot with a bullet wound through one of his ankles. The grand jury returned six indictments against the defendant for assault with intent to murder (G. L. c. 265, § 15) various police officers and two indictments for armed assault with intent to rob (G. L. c. 265, § 18) persons in the restaurant.[3] The defendant has appealed from jury convictions on all eight indictments.

1. The defendant was found to be indigent and was represented throughout by appointed counsel.[4] Counsel seasonably filed a pretrial motion under G. L. c. 261, §§ 27A (inserted by St. 1974, c. 694, § 3), 27B and 27C (as amended through St. 1978, c. 478, §§ 268 and 269, respectively),[5] and under G. L. c. 280, § 4 (as appearing in St. 1978, c. 478, § 312), by which he sought: (a) the inspection by an independent testing laboratory for possible traces of gunpowder residue (such as lead, arsenic, barium and anti-

---

[1] This was the description employed by several police officers who testified at trial.

[2] We are not concerned with these two participants, who pleaded guilty to the indictments returned against them.

[3] The defendant was also indicted under G. L. c. 269, § 10(a), but a finding of not guilty was entered on that indictment under Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), for lack of evidence as to the length of the barrel of the firearm carried by the defendant. See G. L. c. 140, § 121.

[4] For reasons having nothing to do with the merits of the case, the counsel who filed and pressed all the pretrial motions was replaced by different counsel for the purposes of the trial and the appeal.

[5] This case is not affected by any of the amendments of §§ 27A through 27C which were effected by St. 1979, c. 344, § 15, and St. 1980, c. 539, §§ 5 through 7.

mony) on a longsleeved blue jacket which was in the possession of the police and which (according to the minutes of the grand jury and to police statements which had been supplied to the defendant) had been worn by the defendant during the shootout;[6] (b) the cost (estimated at $280) of such analysis; and (c) the cost (estimated at $225) of securing the in-court testimony of an apparently qualified ballistician to the general effect that one would expect to find gunpowder residue on one of the sleeves of the jacket if its wearer had fired a handgun.[7] The first judge of the Superior Court to whom the motion was presented persuaded the prosecutor to have the jacket analyzed by a criminalist employed by the Boston police department and to advise the defendant of the results of the analysis. Such an analysis was performed, and counsel for the defendant was supplied with a copy of the criminalist's report, which was to the effect that no trace of gunpowder residue was found on the jacket.

Counsel thereupon renewed so much of the motion as sought the $225 cost of expert testimony which would interpret the results of the analysis. The motion was heard and denied by another judge of the Superior Court who thereafter ruled on all the pretrial motions filed by the defendant.[8] The judge made no findings of fact, gave no express statement of the reasons for his ruling, and failed to advise the defendant of his right to appeal to a single justice of this court under G. L. c. 261, § 27D, as appearing in St. 1978,

---

[6] Three police officers who made in-court identifications of the defendant at trial testified that he had worn a jacket of that description during the course of the shootout. Such a jacket was found the next morning in a yard near the restaurant and introduced in evidence.

[7] It appeared at trial that all three participants in the attempted robbery had been armed with handguns. It was stipulated that guns were found on the two participants who were captured at the scene, that no other gun was found at the scene and that no spent shell casings were found at the scene. The evidence was equivocal as to whether the defendant had carried and fired a revolver (as alleged in the indictments) or an automatic pistol. He was not carrying any kind of gun when he was arrested.

[8] A different judge presided over the trial.

c. 478, § 269.[9]  The defendant did not appeal to the single justice but now urges on appeal from his convictions that the motion judge erred in denying the third aspect of his motion.  See and compare *Commonwealth* v. *Lockley*, 381 Mass. 156, 158-159 (1980).[10]

There is no question that the evidence desired by the defendant was relevant to one of the issues in the case, namely, the identity or not of the defendant as one of the two participants in the holdup who had fired at the police.[11]  There was no question as to the admissibility of such evidence, as there was in the *Lockley* case.  See 381 Mass. at 158-159, 161-162.  It is doubtful that the judge considered the amount of the requested expense in light of the other expenses the Commonwealth would necessarily incur in the course of a lengthy trial.[12]  The judge does not appear to have considered the likelihood that a solvent defendant,

---

[9] We recognize that such findings and reasons were not required under § 27D, as then in effect, and are not required under §§ 27C(4) and 27D, as now in effect (see St. 1980, c. 539, §§ 7 and 8), unless the defendant files a timely notice of appeal from the order denying his motion. We think such findings and rulings desirable in every case, as they serve to concentrate the judge's thinking on the questions he is required to consider under § 27C, will often serve to obviate unnecessary and time consuming interlocutory appeals, and will serve to narrow the issues in cases which are appealed.  Compare *Commonwealth* v. *Gordon*, 6 Mass. App. Ct. 230, 240 (1978).

[10] The bar should be advised that we may conclude in some future case that the appeal provided for in G. L. c. 261, § 27D, is the exclusive means of securing appellate review of a denial under § 27C.  See *Little* v. *Rosenthal*, 376 Mass. 573, 579 (1978).  That question has not been argued in the present case, and we do not now decide it.

[11] It was stipulated at trial that the gun found on one of the individuals arrested had not been fired.

[12] The judge announced his ruling on the present motion at the same time as his rulings on companion motions under which he allowed the defendant a total of $256.12 for other expenses under G. L. c. 261, § 27C, and Rule 53, § 3(c), of the Superior Court (1974).  Immediately after announcing his rulings, the judge, who expected that he would be the trial judge, said: "And since I am taking this case, do not seek further monies for investigative parties from this Court.  That's it.  I have given you what you asked for now, but I assure you at this point from Alberti, J., it is not open-ended, it is closed."  The trial lasted six days.

able to finance his own defense, would prefer to select and employ a competent expert of demonstrated credibility rather than rely on the testimony of a police criminalist of undisclosed qualifications who might well be a hostile witness. And the judge failed to recognize that the desired evidence might well be all the more valuable to the defendant because his substantial criminal record might deter him from taking the stand in his own behalf.[13] Nor does there appear to have been any consideration of any of the other factors enumerated in the *Lockley* case (381 Mass. at 161, 163) which must be weighed by a judge before he rules on a motion under G. L. c. 261, § 27C.

The Commonwealth presented a strong case of eyewitness identification testimony and circumstantial evidence, and the jury could well have disbelieved the defendant's alibi witness, who testified to an innocuous explanation of the defendant's bullet wound. But the whole atmosphere of the shootout was chaotic; the opportunities of the police officers to observe the features of the individual with whom they were exchanging shots were brief; the police were uncertain whether that individual had been wounded until they found blood on the floor of the restaurant after the individual had escaped; and the evidence was sharply conflicting as to the adequacy of the illumination in a nearby backyard to permit accurate identifications of the defendant by two civilian witnesses who testified that they had observed him there shortly after the shootout, holding a gun in one hand and nursing an ankle with the other. In all the circumstances, we find ourselves unable to conclude that the defendant's inability to produce the desired evi-

---

[13] The judge was aware that the defendant had a criminal record because he had previously deferred action on the defendant's motion under *Commonwealth* v. *Chase,* 372 Mass. 736, 750-751 (1977), and *Commonwealth* v. *Leno,* 374 Mass. 716, 717 (1978), to exclude his record if he should take the stand. That motion was subsequently allowed in part by the trial judge, but the defendant did not testify. It was agreed at the argument on appeal that the defendant had previously been before us in *Commonwealth* v. *Bolduc,* 5 Mass. App. Ct. 115 (1977), *S.C.,* 375 Mass. 530 (1978).

dence was harmless beyond a reasonable doubt, but conclude instead that the ends of justice require that the judgments be reversed, that the verdicts be set aside, and that there be a new trial, in advance of which the defendant may renew his motion before a different judge, who will be free to take such evidence as may be relevant to the motion (see and compare the *Lockley* case, 381 Mass. at 163-164) and who, if he denies the motion, will file written findings and reasons justifying his denial such as are contemplated by G. L. c. 261, §§ 27C(4) and 27D, as now in effect.

2. There was no abuse of discretion in the judge's refusal to permit the defendant, who was seated at counsel table, to sit elsewhere in the courtroom during a portion of the pretrial hearing on the motion to suppress identification testimony. See *Commonwealth* v. *Jones*, 362 Mass. 497, 500-501 (1972); *Commonwealth* v. *Napolitano*, 378 Mass. 599, 603-605 (1979). Honoring the defendant's alternative request to absent himself from the courtroom would have stymied the question whether three of the prosecution's witnesses should be permitted to make in-court identifications of the defendant at trial.

3. We are satisfied that the motion to suppress was properly denied and see no point in narcotizing our readers with a verbal massage of all the progeny of such cases as *Commonwealth* v. *Bumpus*, 354 Mass. 494, 500-501 (1968), cert. denied, 393 U.S. 1034 (1969), *Commonwealth* v. *Leaster*, 362 Mass. 407, 409-411 (1972), *Commonwealth* v. *Botelho*, 369 Mass. 860, 866-869 (1976), and *Manson* v. *Brathwaite*, 432 U.S. 98, 113-117 (1977).

4. The only other question which has been argued will not recur at the retrial if the judge gives the veniremen the names of all the prospective witnesses without indicating whether any of them will be called by the prosecution or by the defense, if the judge gives the veniremen to understand that not all the prospective witnesses may actually be called, and if the judge refrains from mentioning the present addresses of such of the defendant's prospective witnesses as may be incarcerated.

The judgments are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for the further proceedings required by this opinion.

*So ordered.*