COMMONWEALTH *vs.* BRYANT ZIMMERMAN
(and five companion cases[1]).

No. 01-P-1816.

Suffolk. March 14, 2003. - May 28, 2003.

Present: BROWN, GREENBERG, & MASON, JJ.

Further appellate review granted, 440 Mass. 1101 (2003).

*Robbery. Assault and Battery by Means of a Dangerous Weapon. Jury and Jurors. Practice, Criminal,* Jury and jurors, Substitution of alternate juror, Witness, Instructions to jury. *Witness,* Expert. *Evidence,* Identification.

At a criminal trial, where a deliberating juror was dismissed, the judge erred in refusing to instruct the remaining jurors, in accordance with *Commonwealth* v. *Connor,* 392 Mass. 838, 845-846 (1984), that the reason for the juror's discharge was personal and unrelated to the juror's views on the case or her relationship to her fellow jurors, and thereby created a risk that the other jurors would see the judge's inquiry and ultimate discharge of the juror as an objection to (or endorsement of) her views of the evidence. [217-220]

This court was unable to determine whether the judge hearing a criminal defendant's motion for funds to hire an expert witness on the subject of identification properly denied the motion, where the judge did not conduct a sufficient hearing on the matter before making her determination. [220-222]

There was no merit to a criminal defendant's claims that the judge erroneously refused, over objection, to instruct the jury to consider how well the defendants fit the description the complainant gave of his assailants immediately after his attack, nor was there merit to the defendant's claim of error in the judge's allowance of the complainant's testimony of his extreme confidence in his identification of the defendants. [222]

INDICTMENTS found and returned in the Superior Court Department on August 20, 1998.

A pretrial motion for funds was heard by *Maria I. Lopez,* J., and the cases were tried before *James D. McDaniel, Jr.,* J.

*Stella Robinson* for Bryant Zimmerman.

*Richard N. Foley* for Mario Chaparro.

[1]One against Bryant Zimmerman and four against Mario Chaparro.

*Donna Jalbert Patalano*, Assistant District Attorney (*Raffi N. Yessayan*, Assistant District Attorney, with her) for the Commonwealth.

GREENBERG, J. On July 20, 1998, at about 5:00 P.M., John Heaton-Jones was knocked off his bicycle by three young men. One of them drew a gun and struck him in the mouth with it, while the others seized the bicycle. All three assailants fled (one with the bicycle) in the direction of Boylston and Amory Streets in the Jamaica Plain section of Boston. The robbery took less than a minute. The two defendants, Bryant Zimmerman and Mario Chaparro, were arrested, and those defendants now stand convicted of armed robbery and assault and battery with a dangerous weapon.[2] The major appellate point for the two defendants is that the judge improperly discharged a deliberating juror (juror 2) without giving the cautionary instruction mandated by *Commonwealth* v. *Connor*, 392 Mass. 838, 845-846 (1984). There are subsidiary claims of error relating to the denial of defendant Zimmerman's pretrial motion for funds for an expert witness on identification, the judge's instructions on identification, Heaton-Jones's identification testimony, certain remarks made by the prosecutor in closing argument, and coercion of the jury.

1. *Discharge of a deliberating juror.* On the first day of jury deliberations, the judge received a written communication from juror 2, stating that "during deliberations information came out" that, two days earlier, she had seen the defendant Chaparro, presumably near his mother's home not too distant from where juror 2 lived. The juror also recognized Chaparro's mother, who had appeared as a defense witness the day before jury deliberations began, as someone she had seen before on "passing occasions." She concluded the communication by stating that "I am in no way uncomfortable sitting on the jury, since I do not know the defendants or their parents." What prompted her note was the cautionary suggestion of several fellow jurors, who advised her to inform the court.

In the presence of the defendants, both defense counsel, the

---

[2]Chaparro also pleaded guilty to a charge of illegal ammunition possession, and a conviction of receiving stolen property was dismissed. Neither of these dispositions is at issue in this appeal.

prosecutor, and the judge conducted a voir dire of juror 2. Mindful of his obligations not to intrude on the deliberative process, the judge limited his inquiry to eliciting the context within which the subject matter of her living in the same neighborhood as the defendant's mother arose. The juror explained that she was "illustrating relative risk," which led to the following exchange:

JUDGE:      "I'm not sure I understand. . . . Are you suggesting that because you saw these people and they live near you that you felt that there was some kind of risk?"

JUROR 2:      "No, actually I was illustrating the opposite."

The judge then truncated further discussion and suspended deliberations for the weekend.

On the following Monday, the prosecutor asked that juror 2 be excused on the ground that she would have difficulty convicting a neighbor. The judge was not so certain, but decided to conduct an individual voir dire of the jury. There followed a short colloquy with each juror individually during which the judge asked how the subject of juror 2's living in the same neighborhood as defendant Chaparro's mother arose. While seven of the deliberating jurors recollected nothing of concern, two indicated that juror 2 had expressed fear or anxiety about convicting a neighbor, one said that juror 2 had stated that "if anyone should be afraid it should be her," and a third juror said that juror 2 had stated that, because of concerns about neighborhood safety, if she thought someone in her neighborhood had committed a crime, she would want that person convicted, but in fact her proximity would have no impact on her decision at all. None of the questioned jurors indicated that juror 2's disclosure would in any fashion affect their own ability to decide the case on the evidence.

The judge then recalled juror 2 and made a second inquiry concerning the genesis of her disclosure to the other jurors. At this point, she indicated that it arose during their discussion of the evidence. She indicated that "my proximity was not influencing my decision and I was trying to use that to give my position more strength." She also stated that she was less likely

to be suspicious of a neighbor, but that this would not affect her impartiality.

Over both defense counsels' objections and for the reason previously assigned by the prosecutor (i.e., that juror 2 would place more credence in a neighbor's testimony), the judge discharged her from the jury. He made no other findings. After the removal and the substitution of an alternate juror, the judge instructed the jury to begin their deliberations anew, but failed to instruct the jury that juror 2's discharge had nothing to do with that juror's opinions about the case. See *Commonwealth* v. *Connor*, 392 Mass. 838, 845-846 (1984). Counsel for both defendants objected in vain to the lapse.

General Laws c. 234, § 26B, provides for the substitution of a deliberating juror if the juror "dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court." There is no question that the judge was mindful of his obligation to determine whether there was good cause prior to excusing juror 2. And he patiently conducted the requisite hearing to determine whether there was a meritorious reason she could not serve. On the one hand, juror 2 said that she could function impartially, but then again, she also indicated bias in favor of her neighbor. See *Commonwealth* v. *Samuel*, 398 Mass. 93, 96 (1986) (determination of potential juror prejudice is within sound discretion of trial judge); *Commonwealth* v. *Young*, 401 Mass. 390, 405-406 (1987) (jurors' representations or concerns regarding ability to perform impartially are not dispositive). On this record, we cannot conclude that the judge abused his discretion in dismissing her.

It was, however, prejudicial error for the judge to refuse to instruct the remaining jurors, in accordance with the *Connor* decision, that the reason for juror 2's discharge was personal and unrelated to her views on the case or her relationship to her fellow jurors. *Commonwealth* v. *Connor*, 392 Mass. at 846. The *Connor* court warned that "[t]he discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error." *Id.* at 843. In *Connor*, a juror informed the judge after closing arguments, but before the jury charge, that he would prefer not to deliberate because of the personalities of the other jurors. *Id.* at 842-843. The judge concluded that discharge was

not warranted. *Id.* at 843. Eleven hours into deliberation, the judge received a note indicating that the juror said he could not abide by his oath. *Ibid.* The judge inquired of the juror directly, and the juror affirmed that he could not fulfil his obligation. *Ibid.* Rather than risk a mistrial, the judge summarily discharged the "problem" juror and substituted an alternate. *Ibid.* In its decision requiring a reversal of Connor's convictions, the court was justifiably concerned that the judge conducted no hearing prior to the discharge and made no findings establishing "good cause." *Id.* at 846. In addition to concern about the discharge itself, the court stated that the remaining jurors must not be left to speculate that the discharge was based on the juror's views on the merits of the case. See *ibid.*

In the instant case, the judge's failure to inform the remaining jurors that the reason for juror 2's elimination was entirely personal meant precisely that they were left to speculate that juror 2 had been discharged because of her support for the defendants (if that was the jurors' understanding of what she had been expressing), or to protect her from feared retaliation by the defendants (if that was the jurors' understanding of what she had been expressing). Both of these interpretations reflect negatively on the defendants and manifest an impermissible intrusion by the judge, intended or not, on the province of the jury.

This case differs from *Commonwealth* v. *Dosanjos*, 52 Mass. App. Ct. 531, 534-537 (2001), in which we concluded that it was unnecessary for the judge to give a *Connor* instruction because it would have been no more than a statement of the obvious. Here, the remaining jurors had given conflicting accounts of juror 2's statements, leaving the ground for her discharge open to speculation. By handling the situation in the manner that he did, the judge created the very risk he was consciously trying to avoid: that his inquiry and ultimate discharge of this juror could be seen as an objection to (or endorsement of) her views of the evidence.

2. *Other alleged errors.* We turn now to those remaining issues argued by the defendants that may arise in the event of a retrial.

Prior to trial, Zimmerman, who is indigent, moved for funds

to hire an expert witness on the subject of identification. The motion judge, who was not the trial judge, conducted a hearing and eventually concluded that the request was "excessive" because the average defendant would not incur the expense "given the questionable admissibility of this type of evidence." Zimmerman did not take an interlocutory appeal of this order under G. L. c. 261, § 27D,[3] and the Commonwealth contends that the argument is waived. As noted in *Commonwealth* v. *Lockley*, 381 Mass. 156, 159-160 (1980), "[o]rdinarily this failure would prevent [the defendant] from raising the issue on [direct] appeal." Because the motion judge had not advised the defendant of his rights under § 27D as the statute requires, however, and because the statute had never been construed, the court in *Lockley* entertained the claim. *Commonwealth* v. *Lockley, supra* at 160.

Nothing in the record indicates that the motion judge in the instant case advised Zimmerman of his right to appeal her denial of the requested funds. Contrary to the Commonwealth's argument, the notification prerequisite cannot be dispensed with on the mere assumption that the defendant was aware of his rights because his counsel cited the *Lockley* case in support of his motion for funds. That assumption would be too facile. "The Legislature could, and did, express a definite policy as to the method to be followed," *Gallo* v. *Commonwealth*, 343 Mass. 397, 402 (1961), to alert defendants of their rights in this matter. To avoid the unnecessary controversy which has arisen here and to "provide a procedural safeguard," the Legislature opted to require that defendants affirmatively be advised of their interlocutory appellate rights. "What occurred was not a compliance and was ineffectual." *Ibid.*

---

[3]The pertinent part of G. L. c. 261, § 27D reads as follows:

"In any case where the court denies a request for . . . payment by the commonwealth of fees and costs, . . . the applicant may take an appeal as hereafter provided. If the matter arises in the superior . . . court . . . , the appeal shall be to a single justice of the appeals court at the next sitting thereof . . . . Upon being notified of the denial the applicant shall also be advised of his right of appeal, and he shall have seven days thereafter to file a notice of appeal . . . ."

Nevertheless, on this record we cannot determine whether funds were properly denied. As in *Commonwealth* v. *Lockley*, 381 Mass. at 161-164, the motion judge did not conduct a sufficient hearing on the matter before making her determination. She does not appear to have considered the desirability or necessity of the requested evidence to Zimmerman's case, which must be weighed before a judge rules on a motion under G. L. c. 261, § 27D. See *Commonwealth* v. *Lockley*, *supra* at 161. We cannot correctly say as matter of law that expert testimony regarding the reliability of eyewitness identifications generally, or in the specific context of cross-racial identifications, does or does not meet the standard of G. L. c. 261, § 27C. The decision whether to admit such evidence must be made on a case-by-case basis. See *Commonwealth* v. *Hyatt*, 419 Mass. 815, 818-819 (1995). Similarly, the appropriateness of a jury instruction on interracial identification is a question that may only be answered on the specific record that develops in the event of a retrial. See *ibid*.

Next, the defendant Chaparro claims that the judge erroneously refused, over co-counsel's objection, to instruct the jury to consider how well the defendants fit the description Heaton-Jones gave of the assailants immediately after the attack. So particularized an instruction, which may suggest a certain view of the evidence, is not required. Cf. *Commonwealth* v. *Key*, 381 Mass. 19, 27 (1980).

Neither is there merit to Chaparro's claim of error in the judge's allowance of Heaton-Jones's testimony of his extreme confidence in his identification of the defendants. See *Commonwealth* v. *Santoli*, 424 Mass. 837, 846 (1997); *Commonwealth* v. *Drane*, 47 Mass. App. Ct. 913, 914 (1999).

We do not address the claimed errors in the prosecutor's closing argument or in the judge's handling of the jury's indication that it could not reach a verdict.

*Judgments reversed.*

*Verdicts set aside.*