## Commonwealth *vs.* Mario Garcia Brito.

Essex. March 7, 1988. — July 11, 1988.

Present: Hennessey, C.J., Wilkins, Liacos, & Abrams, JJ.

*Practice, Criminal,* Jury and jurors, New trial, Failure to make objection. *Jury and Jurors. Constitutional Law,* Equal protection of laws, Jury, Establishment of religion, Assistance of counsel. *Interpreter.*

On an appeal from a conviction of first degree murder, this court found no reason to reconsider its decisions in *Commonwealth* v. *Acen,* 396 Mass. 472 (1986); *Commonwealth* v. *Callahan,* 401 Mass. 627 (1988); or *Commonwealth* v. *Pope,* 392 Mass. 493 (1984), with respect to the defendant's assertion of constitutional claims concerning the State jury system. [766]

There was no merit to a criminal defendant's assertion that the indictment form, trial procedures and the prospective juror notifications constituted an establishment of religion. [766]

Where on the record of a criminal trial there was no showing that the defendant lacked ability to communicate with his chosen counsel, his claim that he was entitled to a Spanish speaking attorney was meritless. [766]

In the circumstances of a murder case where the evidence was overwhelming against the defendant from eyewitnesses, the coroner, and the person to whom the defendant confessed, no prejudice to the defendant was shown by the use of a fellow prisoner as the defendant's interpreter during pretrial conversations with his chosen counsel. [767]

Indictment found and returned in the Superior Court Department on January 25, 1984.

The case was tried before *Robert A. Barton,* J., and a motion for a new trial was heard by *O'Connor,* J., in the Supreme Judicial Court for the county of Suffolk.

*Fred Hewitt Smith (Cynthia Smith* with him) for the defendant.

*Judith Fabricant,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. Convicted by a jury of murder in the first degree on May 18, 1984, the defendant, Mario Garcia Brito, appeals.[1] The defendant alleges that a substantial likelihood of a miscarriage of justice exists due to various Federal and State constitutional errors. We discuss the specific allegations seriatim. The defendant claims further that the cumulative effect of all the alleged errors creates a substantial likelihood of a miscarriage of justice. The defendant seeks either a new trial or an evidentiary hearing on newly raised issues. We conclude that there was no error in the denial of the motion for a new trial, and that no reason exists to exercise our discretionary power under G. L. c. 278, § 33E (1986 ed.), either to order new proceedings or to reduce the conviction of murder in the first degree.

The jury could have found the following facts on the evidence presented. At the time of the murder, the defendant shared an apartment with three other men: Phillip Francis, a man known as Evangelio, and Jose Guillama. All four men were homosexuals. The defendant and Guillama were involved in a relation-

[1] An unusual procedural history brings the case before this court. No particular purpose would be served by recounting in full the postconviction motions filed by the defendant in the Superior Court and in this court's single justice session. It suffices to say that the delay in our hearing the appeal is largely attributable to the defendant's motions.

In addition, the defendant's brief and record appendix, which admittedly contain material that is not part of the record below, have been the subject of a series of motions and rulings in this court. See Mass. R. A. P. 8 (a), as appearing in 378 Mass. 924 (1979). On July 30, 1987, a single justice denied the defendant's motion to expand the record. See Mass. R. A. P. 8 (e), as appearing in 378 Mass. 924 (1979). On August 3, 1987, the single justice ordered further that the defendant strike those parts of his brief requiring reference to the record appendix, and allowed the defendant to refile an appropriate brief and appendix.

On September 2, 1987, the Commonwealth moved to dismiss the appeal on the ground that the defendant had not filed a brief complying with the August 3, 1987, order and with the Massachusetts Rules of Appellate Procedure. In light of our disposition of this case, it is unnecessary to consider the Commonwealth's motion to dismiss the appeal. We note that, at oral argument, the defendant explicitly waived his right to a direct appeal from the case below. He pursues only his appeal from the denial of the motion for a new trial. His brief makes no argument of error during the conduct of the trial. Although we could consider this to be a waiver of claims of error, see Mass. R. A. P. 16 (a), 367 Mass. 919 (1975), because of the gravity of a conviction of murder in the first degree, we have fulfilled our duty to give plenary review of the trial. See G. L. c. 278, § 33E.

ship, as were Phillip Francis and Evangelio. During the time in which the four men lived together, the defendant and Guillama had various arguments, some of which involved physical violence by the defendant toward Guillama. On several occasions, the police were called to the apartment and found the defendant and Guillama fighting. The arguments, at times, related to the defendant's suspicion of a romantic or sexual relationship between Guillama and Francis.

On March 21, 1982, Francis arrived home and found the defendant alone in the apartment. The defendant came to Francis's bedroom and accused him of wanting to have sexual relations with Guillama. The defendant was carrying a blue shoulder bag, from which he pulled out a .22 caliber gun. The defendant showed Francis the weapon and told him it was "for the house." Later that evening, the other two residents of the apartment arrived. As the four men prepared to go out for the evening, the defendant and Guillama argued about whether Guillama and Francis were interested in having a relationship with each other. As they went outside to wait for a taxi, the defendant and Guillama continued to argue. Francis attempted to quiet the argument by standing between the two men. The first taxi arrived, but the driver, hearing the argument, left. As Francis started toward the house to call another taxi, the defendant pulled the gun out of his shoulder bag and told Guillama, "I'm going to kill you." The defendant held the gun with two hands, pointing it at the victim from a five to six foot distance. Guillama then pulled out a "little steak knife" and waved it at the defendant, telling him to back away. Francis, standing between the two, attempted to get the knife away from Guillama. He suddenly heard a "click" as the defendant "pulled the trigger back," and he ran into the vestibule of the apartment building. While Francis watched through the glass outer door of the building, the defendant shot Guillama. The victim hunched over and then tried to crawl into the building. The defendant approached him, leaned over, and fired approximately five more times into the victim's body. The defendant then fled toward the nearby "Commons," still carrying his blue

shoulder bag.[2] Guillama died at the hospital of multiple gunshot wounds to the heart.[3]

The defendant fled to New York. There, he entered into a sexual relationship with a new male friend, Manual Armando Perez. While they were living together, their relationship was characterized by physical abuse of Perez and threats of death by the defendant, similar to those that marked his relationship with Guillama. The defendant admitted killing Guillama to Perez. He first explained the killing as self-defense, but later expressed his displeasure that Guillama worked frequently and had "come back from the work only with spaghetti." The New York police, after receiving an anonymous call from one of Perez's friends, verified with the Massachusetts State police that a warrant for the defendant's arrest was outstanding. On July 12, 1983, the defendant was arrested in New York City.

After the defendant was returned to Massachusetts and indicted for murder in the first degree, he requested that the court appoint Attorney Frank Kelleher to represent him. At Mr. Kelleher's request, the judge allowed funds for a Spanish speaking investigator, and appointed an impartial interpreter to accompany the defendant throughout the trial. The interpreter translated all proceedings for the defendant and assisted him in communicating with his attorney during the trial. Before jury selection began, Mr. Kelleher informed the court that the Commonwealth had offered the defendant an opportunity to plead guilty to murder in the second degree, that counsel had discussed the proposed plea at length with the defendant

---

[2] This account was corroborated generally by the eyewitness testimony of John Fritz, a neighbor. Fritz testified that on March 21, 1982, while watching television, he glanced out the window and saw two people emerge from the defendant's apartment house. One man had a bag "strung over his shoulder." Fritz "heard some shots ring out," and saw the man with the bag holding a gun whose muzzle was flashing. After the shooting the gunman took off toward the "Commons."

[3] The police recovered seven .22 caliber casings from the area in front of the building. Subsequent analysis of six of these casings showed them to have been fired from the same gun. Two of the five bullets recovered from the victim's body, and one found in his boot, were fired from a single gun, the same gun that fired the casings found at the scene. Two other bullets were too damaged for conclusive comparison.

through an interpreter, and that the defendant had rejected the offer.[4]

At trial, the defendant testified. He denied shooting Guillama. He testified, rather, that he was travelling at the time of the shooting. The defendant also denied ever using a shoulder bag or owning and carrying a gun. The judge instructed the jury on the crimes of murder in the first degree based on deliberation and premeditation, murder in the second degree, manslaughter, and on self-defense. There was no objection to any aspect of the charge.

In his motion for a new trial, the defendant admitted shooting Guillama, claiming he did so because "I thought he was going to stab me. I was very angry." He asserted that he had perjured himself during his trial testimony because he knew that no one on the jury would be able to understand him in Spanish and therefore would not believe him. He further claimed to have lied to his attorney because he had to communicate with him through an interpreter, a procedure with which he claimed to be uncomfortable. He also asserted that the jury pool was prejudiced against non-English speaking persons. At the time of his motion for a new trial, the defendant requested funds to hire a consultant to conduct an experiment designed to determine the attitudes of the population of Essex County toward non-English speaking persons, aliens, and foreign-looking individuals, and to evaluate the attitudes and abilities of a jury containing Spanish speaking members. This motion and other similar motions later filed were denied. See *Commonwealth* v. *Pope,* 392 Mass. 493, 498-499 (1984) (challenges to jury composition must be raised by appropriate pretrial or trial motions).

We review the defendant's claims of error in the denial of the motion for new trial solely to determine if there was error of law or an abuse of discretion. *Commonwealth* v. *Sperrazza,* 399 Mass. 1001, 1002 (1987).

---

[4] Mr. Kelleher also stated that he had talked with the defendant through an interpreter for "a couple of hours" on a day several weeks prior to trial, and had discussed the possible plea with the defendant the previous evening, at the jail, through an interpreter. There was no mention of the identity of this interpreter and no objection to his qualifications.

1. *Equal protection and due process claims.* The defendant asserts a number of constitutional claims [5] concerning the jury system in Massachusetts. He alleges a deprivation of equal protection of the laws and denial of a judgment by his peers because of the exclusion of non-English speaking jurors. He also asserts a violation of due process because of the necessity of testifying through an interpreter and because the juror notification form may be prejudicial against non-English speaking defendants. Similar claims were extensively considered and rejected by this court in *Commonwealth* v. *Acen,* 396 Mass. 472, appeal dismissed, 476 U.S. 1155 (1986). *Acen* is dispositive of these claims. See *Commonwealth* v. *Callahan,* 401 Mass. 627, 637 (1988). See also *Commonwealth* v. *Pope, supra* (rejecting same claim). We see no reason to reconsider these decisions. There was no error.

2. *First Amendment grounds.* The defendant's assertion that the indictment form, trial procedures, and prospective juror notification notices are an establishment of religion is meritless. See *Commonwealth* v. *Callahan, supra* at 637-638.

3. *Effective assistance of counsel.* The defendant asserts several grounds for deprivation of his Sixth Amendment right to effective assistance of counsel. [6]

a. *Bilingual counsel.* The defendant asserts that he was entitled to a Spanish speaking attorney, if one was available. Putting aside the fact that he received counsel of his own choice, this claim has no merit. We have decided the matter previously in *Commonwealth* v. *Garcia,* 379 Mass. 422, 434-437 (1980). There is no showing on this record of a lack of ability by the defendant to communicate with his appointed counsel.

---

[5] The defendant alleges, inter alia, violation of his Federal Fourteenth Amendment rights to due process and equal protection, and of State constitutional rights to equality of the law under art. 1, and to a judgment of his peers under art. 12.

[6] The defendant challenges the practice of this court providing that appellate counsel may submit a bill for services only after the rescript is published. The relevance of this argument to the defendant's claims of error eludes us. We note that the defendant specifically disclaims any implication that appellate counsel's work was inferior. Thus, no prejudice is asserted.

b. *Pretrial interpreter.* The defendant alleges that pretrial conversations with his trial counsel were conducted through use of a fellow prisoner as an interpreter.[7] The record is bereft of any indication that trial counsel sought an impartial translator at this stage. See *Commonwealth* v. *Garcia, supra* at 436 n.6. Nor did he object to the pretrial interpreter, or make an offer of proof to show prejudice. There was apparently no attempt to use this translator as a witness. Moreover, the defendant specifically asked for Mr. Kelleher. Apparently, Mr. Kelleher had represented him before on other matters. Thus, the two had a working relationship. Mr. Kelleher requested, and received, the use of a bilingual investigator and a bilingual translator when he felt it was necessary.

The defendant asserts, in effect, that he mistrusted the interpreter and therefore lied to his attorney, and that he was precluded from a meaningful discussion with his attorney regarding various possible defense strategies. While the more prudent course would be to secure an impartial interpreter even for pretrial conferences, the facts of this case suggest no prejudice to the defendant. The defendant faced overwhelming evidence against him from the two eyewitnesses, the coroner, and Perez. The jury could have chosen not to believe the defendant's alibi. Moreover, although the judge instructed on lesser degrees of culpability, it was within the jury's discretion to have found that the defendant's purchase of the gun, and his repeateded shooting of the victim even as the latter retreated, constituted murder in the first degree. There was no error in denying the motion for new trial.

4. *Cumulative effect.* The defendant asserts that the cumulative effect of the alleged errors requires a conclusion that a miscarriage of justice occurred. See *Commonwealth* v. *Cancel,* 394 Mass. 567, 576 (1985). We disagree. For the reasons stated above, we find no merit to the defendant's arguments. We have reviewed the entire record, and there is no reason to

---

[7] There is no reference in the trial record as to the interpreter's identity. See note 4, *supra.* We assume, for the purpose of this appeal, that a fellow prisoner was indeed used as a pretrial interpreter.

exercise our power under G. L. c. 278, § 33E, to order either a new trial or a reduction to a lesser offense of the conviction of murder in the first degree.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*