COMMONWEALTH *vs.* JOSE MARTINEZ
COMMONWEALTH *vs.* EFRAIN LIRIANO.

Plymouth. March 8, 1995. - June 19, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Practice, Criminal,* New trial, Grand jury proceedings, Conduct of prose-
cutor, Assistance of counsel, Interpreter, Loss of evidence by prosecu-
tor. *Grand Jury. Evidence,* Leading question, Consciousness of guilt.
*Constitutional Law,* Assistance of counsel.

No substantial risk of a miscarriage of justice was created by a judge's
denial of defendants' motions for new trial that raised for the first time,
postappeal, the issue of the prosecutor's use of leading questions in
presenting evidence to the grand jury, where the presentation of the
matter to the grand jury involved no prosecutorial misconduct or likely
prejudice. [624-626]

A criminal defendant failed to demonstrate that trial counsel's failure to
seek to retain the services of a ballistics expert was ineffective assis-
tance of counsel where there was no showing that such expert testimony
would have accomplished something material for the defense [627-628],
nor did the defendant demonstrate a substantial risk of a miscarriage of
justice [628].

Criminal defendants demonstrated no prejudice or substantial risk of a
miscarriage of justice by reason of alleged failures to furnish interpret-
ers or to translate certain documents. [628]

No substantial risk of a miscarriage of justice was demonstrated by police
officers' having lost a criminal defendant's wallet seized from him dur-
ing the execution of a search warrant, where the lost evidence was mar-
ginally exculpatory at best. [628-629]

Criminal defendants did not demonstrate that a substantial risk of a mis-
carriage of justice was created by the judge's failure to instruct the
jury, on his own motion, on the issue of consciousness of guilt. [629]

INDICTMENTS found and returned in the Superior Court
Department on June 20, 1990.

The cases were tried before *Richard G. Stearns,* J., and,
while defendants' appeals from their convictions were pend-

ing in the Appeals Court, motions for a new trial, and a motion for fees for an expert were considered by him.

The Supreme Judicial Court granted applications for direct appellate review.

*Mary F. Costello* for Efrain Liriano.

*Mary E. Mullaney*, Assistant District Attorney, for the Commonwealth.

*Geri Laventis*, for Jose Martinez, submitted a brief.

WILKINS, J. On May 15, 1990, members of the Brockton police department executed a "no-knock" search warrant on the first floor apartment of a home at 63 Arthur Street. As some officers sought access by battering through the rear door while announcing in English and Spanish that they were police, two other officers attempted to create a diversion by breaking windows on opposite sides of the house. One of those officers, Arthur McClaren, exchanged shots through a window with the defendant Martinez. Both were wounded. Martinez unsuccessfully argued to the jury that he had fired in self-defense. Substantial quantities of drugs and cash were discovered in the house. Martinez and the defendant Liriano, who was also present, were arrested. We need not recite all the evidence on which the jury could have relied to determine that the defendants were involved in the retail distribution of cocaine.

Each defendant was found guilty of trafficking in cocaine in an amount between 100 and 200 grams and with distribution of cocaine within 1,000 feet of a school. The defendant Martinez was also found guilty of armed assault with intent to murder; assault and battery by means of a dangerous weapon; and unlawfully carrying a firearm. On October 14, 1994, in an unpublished decision, the Appeals Court affirmed both defendants' convictions. See *Commonwealth* v. *Martinez*, 37 Mass. App. Ct. 1113 (1994). While the defendants' appeals were pending in the Appeals Court, each defendant, relying on points not argued on direct appeal, filed a motion

for a new trial.[1] The trial judge denied each without a hearing. This court allowed the defendants' applications for direct appellate review of the orders denying their motions seeking a new trial. We affirm the orders denying the defendants' motions.[2]

1. The defendants argue that their indictments should be dismissed because the prosecutor inappropriately presented the Commonwealth's case to the grand jury through the use of leading questions. Neither defendant raised this issue before trial or in his direct appeal from his convictions, as he could have. The issue surfaces for the first time in Martinez's motion for a new trial and in Liriano's amended motion for a new trial. The judge denied the motions, "after consideration of the arguments raised," in one case, and "after consideration of the grounds asserted," in the other.

A simple denial of a motion for a new trial would not breathe complete vitality into an issue that could have been raised at trial or on appeal but is presented instead for the first time by a postappeal motion for a new trial. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 (1994); *Commonwealth* v. *Richardson*, 361 Mass. 661, 663, cert. denied, 409 U.S. 884 (1972). Where, however, the judge considers the merits of an argument that a defendant could have raised earlier, but makes for the first time in a postappeal new trial motion, the motion judge's action breathes some life into the issue, and on appeal we consider it to determine if there has been a substantial risk of a miscarriage of justice. *Commonwealth* v. *Curtis, supra* at 625-626.

It is not possible to determine from the judge's terse rulings whether (a) he considered the challenge to the grand jury proceedings (and other issues) on the merits and then denied the new trial motions or (b) he decided in his discre-

---

[1]The defendant Liriano did argue in his appeal that counsel was ineffective in failing to have "critical" documents translated into Spanish. The translation question comes to us in a somewhat different form in this appeal.

[2]Martinez also objects to a posttrial order denying his motion seeking funds to retain a ballistics expert. We also affirm that order.

tion that the merits of the issue need not be reached, con-
cluding that this was not a case "where, upon sober reflec-
tion, it appears that a miscarriage of justice might otherwise
result." *Commonwealth* v. *Harrington*, 379 Mass. 446, 449
(1980). We shall assume in the defendants' favor, however,
that the judge considered and rejected the grand jury issue
on the merits.[3] We see no substantial risk that there was a
miscarriage of justice.

Courts have the authority to supervise grand jury proceed-
ings to ensure the effective administration of justice. See
*Matter of Pappas*, 358 Mass. 604, 613 (1971), aff'd sub
nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972). If there is a
basis in law for doing so, a court may dismiss an indictment.
See *Commonwealth* v. *LaVelle*, 414 Mass. 146, 149-150
(1993); *Commonwealth* v. *Gordon*, 410 Mass. 498, 502-503
(1991). See also *Commonwealth* v. *St. Pierre*, 377 Mass.
650, 655 (1979) (discussing dismissal where the integrity of
the grand jury has been impaired). A defendant has the bur-
den of showing prejudice in the proceedings, and, even on
direct appeal, a defendant would have to demonstrate inten-
tional or egregious prosecutorial misconduct in the use of
leading questions. See *Commonwealth* v. *Mayfield*, 398
Mass. 615, 620-622 (1986).

Although the use of leading questions in presenting evi-
dence to a grand jury has been challenged from time to
time,[4] the defendants cite, and we have found, no reported

---

[3]If we took the opposite view, the defendants would have the burden of
persuading us that the judge abused his discretion in not reaching the mer-
its of the grand jury issue and thereby created a substantial risk of a mis-
carriage of justice. *Commonwealth* v. *Curtis*, 417 Mass. 619, 624 n.4
(1994). The defendants make no such argument.

[4]When the use of leading questions in grand jury presentations has been
challenged in Federal courts, the practice has occasionally prompted criti-
cism, but relief has consistently been denied. See, e.g., *United States* v.
*Brito*, 907 F.2d 392, 395-396 (2d Cir. 1990) ("leading questions tend to
mute one of the chief functions of the grand jury, the evaluation of the
strength of the evidence and the credibility of witnesses," but no mislead-
ing of the grand jury or prejudice shown); *United States* v. *Brown*, 872
F.2d 385, 388 (11th Cir.), cert. denied, 493 U.S. 898 (1989) ("[h]owever
questionable the practice may have been in presenting the case to the

decision in which an indictment was dismissed solely because the prosecutor used leading questions. Although one could hypothesize a circumstance in which leading questions were used consciously and prejudiciously to avoid the disclosure of exculpatory evidence, the presentation to the grand jury in this case involved no such prosecutorial misconduct or likely prejudice. Certainly there has been no showing here of a substantial risk of a miscarriage of justice.

The first witness before the grand jury, a Brockton police officer, was used to provide the circumstances concerning the police raid on the house on Arthur Street. Without question this officer's testimony was dominated by leading questions. Instead of letting the officer provide a narrative description of what happened, the prosecutor provided the facts in many instances and asked the witness to affirm them. On the other hand, the presentation was a straightforward recital of events that under oath the police officer agreed had occurred. The prospect that a different manner of presentation would have made a difference in the grand jury's action, or in the trial of the case, is nonexistent.

The other witness before the grand jury, the Brockton police officer who was shot, was not led to any significant degree by the prosecutor's questions. The contrast in the treatment of the two witnesses is marked. The second witness, whose testimony was significant concerning his shoot-out with the defendant Martinez, was permitted to tell his story in his own words ("What did you observe?" "What did you do at that point?" "And what happened next?"). The procedure followed was unexceptionable.

---

grand jury [in large part by leading questions], it must be remembered that a duly-sworn witness actually testified to the factual correctness of all the questions asked him by the prosecutor"); *United States* v. *Giorgi*, 840 F.2d 1022, 1032 (1st Cir. 1988) (claim that leading questions were improperly used not supported by record). For State cases also denying relief, see *Coger* v. *State*, 517 P.2d 1403, 1405-1406 (Alaska 1974); *People* v. *Hirsch*, 221 Ill. App. 3d 772, 779 (1991); *State* v. *Holsten*, 223 N.J. Super. 578, 585-586 (1988); *State* v. *Velasquez*, 99 N.M. 109, 112 (Ct. App. 1982).

2. Martinez argues that he was denied the effective assistance of counsel because his trial counsel did not seek to retain the services of a ballistics expert. It was Martinez's theory at trial that he did not know who had broken the window, that the first of three shots he had fired was a warning shot into the ceiling, and that he had fired at Officer McClaren only after the officer had fired at him. The evidence of who fired first and of the sequence of shots was not consistent. Officer McClaren testified that three shots were fired at him, two of which struck him. There was expert testimony that Martinez's gun had fired three shots. If Martinez fired one shot into the ceiling, three shots were not fired "at" Officer McClaren.

A State police ballistics expert testified that in October, 1990, he had removed a .38 caliber projectile from the floor joists of the second floor above the ceiling of the room in which Martinez was shot. He made comparisons with the revolver found on the floor near Martinez on the day of the police raid and shootings, and concluded that "the projectile recovered from that ceiling has the same general rifling system as" the gun Martinez had fired. "It has similar land and groove width dimensions but insufficient amount of striations" to reach a definite conclusion. He testified that the state of the projectile was consistent with its having been fired from the weapon that Martinez used. There was evidence that the projectile's angle of entry into the ceiling was consistent with the theory that Martinez had fired the shot.

Martinez has not demonstrated that trial counsel was remiss in failing to obtain an expert to testify concerning the projectile. The Commonwealth's expert witness substantially corroborated Martinez's theory and testimony that he had fired a shot into the ceiling. The testimony of a ballistics expert could not, of course, instruct the jury on when, in the sequence of events, a shot may have been fired into the ceiling. More conclusive testimony concerning the source of the projectile in the ceiling, if it could have been obtained from another expert, would not have accomplished something material for the defense. *Commonwealth* v. *Satterfield*, 373

Mass. 109, 115 (1977). See *Lockhart* v. *Fretwell*, 506 U.S. 364, 372-373 (1993); *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984).

We also conclude that Martinez has failed to show a substantial risk of a miscarriage of justice. When that is so, any ineffective assistance of counsel claim under the Federal or State Constitution must fail. See *Commonwealth* v. *Curtis*, *supra* at 625 n.4.[5]

3. We dispose of other arguments briefly. (a) The defendants have not shown that they were prejudiced (or that there is a substantial risk of a miscarriage of justice) because they were not furnished interpreters at their initial arraignments and because certain documents, including the indictments, were not translated from English to Spanish. These belatedly-raised arguments lack supporting facts in the record and provide no legal basis for relief. See *Commonwealth* v. *Olivo*, 369 Mass. 62, 72-73 (1975). See also *Commonwealth* v. *Brito*, 402 Mass. 761, 767 (1988); *Commonwealth* v. *Garcia*, 379 Mass. 422, 436 n.6, 438 n.8 (1980).

(b) Martinez argues further that he is entitled to a new trial because the police lost Liriano's wallet which a police officer had seized from Liriano during the search of the Arthur Street apartment.[6] He claims that the wallet contained train ticket stubs that would tend to show that the defendants had arrived in Boston on May 14, 1990, the day before the shooting and the arrests. The train tickets would hardly

---

[5]Assuming the issue is properly here (the defendant did not appeal pursuant to G. L. c. 261, § 27D [1992 ed.]. See *Commonwealth* v. *Souza*, 397 Mass. 236, 240 n.5 [1986]; *Commonwealth* v. *Lockley*, 381 Mass. 156, 159-160 [1980]), the denial of Martinez's motion for fees to retain a ballistics expert was not an abuse of discretion. For reasons that we have just stated, another expert was not reasonably necessary to assure Martinez a defense. G. L. c. 261, § 27C (4) (1992 ed.). Compare *Commonwealth* v. *Bolduc*, 10 Mass. App. Ct. 634, 637-638 (1980), *S.C.*, 383 Mass. 744 (1981).

[6]Martinez first raised this issue in his motion for a new trial, and we shall consider it as to Martinez. Liriano did not raise the issue in any motion for a new trial, and thus the issue is not before us as to him. What we say as to Martinez would be dispositive as to Liriano if the issue were before us.

be exculpatory as to the events of May 15. At most they would have tended to show that the defendants had not been present on certain prior days when the house had been under police surveillance. The tickets might have also given some slight support to the defendants' position that they did not know about the drugs and sales of drugs at the Arthur Street apartment.

When the police lose evidence that a defendant claims was exculpatory, the defendant may be entitled, on a motion for a new trial, to relief on consideration of (1) the culpability of the Commonwealth, (2) the materiality of the lost evidence, and (3) the potential prejudice to the defendant. See *Commonwealth* v. *Waters, ante* 276, 279 (1995), and cases cited.[7] We have already commented on the relative insignificance of the lost evidence and thus on the minimal prejudice that the loss could have caused Martinez. The lost evidence is marginally exculpatory at best. The defendants cross-examined the police officers about the lost wallet and presented evidence of its contents. There is no showing that the police were more than negligent in losing the wallet. Martinez has fallen far short of demonstrating that the loss of the wallet created a substantial risk of a miscarriage of justice.

(c) The judge was not obliged on his own motion to instruct the jury on consciousness of guilt. See *Commonwealth* v. *Simmons*, 419 Mass. 426, 435-436 (1995). The defendants have not established that the failure to give such an instruction created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Jackson*, 419 Mass. 716, 733-734 (1995).

> *Orders denying motions for new trial affirmed.*
> *Order denying motion for fees for expert affirmed.*

---

[7]Martinez does not argue for the dismissal of the charges against him, but only for a new trial with a voir dire concerning the lost wallet.