Nickerson, Gary A., J.
On April 10, 2009, a grand jury voted to indict the defendant, Robert Vacher, for the following offenses: murder (G.L.c. 265, §1), armed robbery (G.L.c. 265, §17), assault and battery with a deadly weapon (G.L.c. 265, §15A(b)), and disinter body (G.L.c. 272, §71). The defendant now moves to dismiss the indictments on the ground that the evidence presented to the grand jury did not establish probable cause to support his indictments under Commonwealth v. McCarthy, 385 Mass. 160 (1982). The defendant also moves to dismiss the indictments on the ground that the Commonwealth’s presentment of evidence impaired the integrity of the grand jury proceedings under Commonwealth v. O’Dell, 392 Mass. 445 (1984). For the following reasons, the defendant’s Motion to Dismiss is DENIED.

*344
EVIDENCE PRESENTED TO THE GRAND JURY

The following evidence was presented to the grand jury. On or about December 16,2008, Jordan Mendes, the victim (“the victim”), died as a result of either a stab wound, gunshot wound, or a combination of both. The victim’s body was discovered the following day. The Commonwealth charged the defendant and co-defendants, Mykel Mendes (“Mendes”) and Kevin Ribeiro (“Ribeiro”) (collectively, “the co-defendants”) with the victim’s death.
During the grand jury proceedings, the grand jury heard testimony from 31 witnesses. Testimony included that of Scott Claudio (“Claudio”), the victim’s cousin, who discussed his conversation with the defendant while being held in an adjacent cell at the Barnstable House of Corrections. Claudio testified that the defendant discussed the circumstances of the charged crimes and admitted to participating in them. According to Claudio, the defendant stated he and another “shot [the victim], killed him, [threw] him in the ditch, and then . . . burned him.” Claudio also testified that the defendant stated he shot the victim with a handgun and following the murder, threw the handgun into the water, which Claudio assumed meant the beach. Discussing motive, Claudio recounted the defendant’s statement that he and the co-defendants suspected the victim had $200,000 and planned to rob him, but when things escalated, they killed him.
Benjamin Tubbs (“Tubbs”) provided similar testimony as to the circumstances, motive, and weapon involved in the charged crimes. Tubbs described a conversation with the defendant in which the defendant admitted killing the victim and stated, “I have something to tell you ... I killed [the victim] ... I shot [the victim].” Tubbs also discussed motive and recounted the defendant’s statement that he and the co-defendants had planned “to rob [the victim] for some money . . .” and that “[t]hings went bad so we shot him.” According to Tubbs, the defendant also stated that after shooting the victim, he was unsure if the victim had died, so he stabbed the victim in the neck. Finally, Tubbs testified that the defendant described cleaning up the victim’s blood, wrapping the body in a blanket, throwing it in a hole, and using gasoline to burn it. According to Tubbs, the defendant explained that they “went to a gas station right near where the body was found . . . [a]nd bought the gas that they burned [the victim] with.” Tubbs testified that the defendant stated he and the co-defendants would not get caught because they had cleaned up the blood and there was no physical evidence.
In addition to Claudio and Tubbs’ testimony, the Commonwealth introduced testimony from other witnesses to support its case theory. The Commonwealth’s theory was that the offenses stemmed from drug dealing activity and offered testimony from Travis Festog (“Festog”), Joshua Crockett (“Crockett”), and Leslie Vacher (“Ms. Vacher”) concerning the defendant’s reputation for using and selling drugs. Similarly, Kellyanne Palma (“Palma”), Christopher Leone (“Leone”), Katie Roy (“Roy”), Fallon Souza (“Souza”), and Paula Carberry (“Carberry”) testified that the victim’s father was in prison for involvement in a cocaine ring, and that there were rumors that the incident involved drug dealing activity.
One aspect of the Commonwealth’s theoiy was that, knowing the victim had $200,000 in cash, the defendant and co-defendants originally planned to rob the victim and use the money for drugs. During the grand juiy proceedings, John Viust (“Viust”), Tianne Mendes (“Ms. Mendes”), and Carberry testified that the defendant and co-defendants planned to steal the victim’s money in order to purchase drugs, and Tember Magee (“Magee”) testified that the defendant may have used $10,000 of the stolen money to purchase a BMW.
According to the Commonwealth, when the robbery became difficult, things escalated and the defendant and co-defendants murdered the victim. To support this theoiy, the Commonwealth offered testimony from Viust, Tyrone Gomes (“Gomes”), Hanna Muiphy (“Murphy”) and Souza who described Mendes’ reputation for being a “terror,” a “loose cannon,” a “little crazy,” having a tendency to fight, and carrying a gun. Likewise, Palma, Gomes, and Crockett discussed Ribeiro’s prior violent acts and involvement in shootings, as well as “bad blood” between the families involved. Based on the testimony and exhibits introduced during the grand juiy proceedings, the grand jury voted to indict the defendant for the charged offenses.
The defendant now moves to dismiss the indictments under McCarthy arguing that the evidence presented to the grand juiy did not establish probable cause to support the indictments. He argues that the witness’ testimony was not based on personal knowledge of relevant events, but on rumors, speculation, and hearsay, and therefore does not support the indictments. The defendant also moves to dismiss under O’Dell, arguing that the Commonwealth’s presentment impaired the integrity of the grand jury proceedings because the prosecutor asked leading questions and offered improper character evidence concerning the defendant and co-defendants’ reputation and prior bad acts.

DISCUSSION

A. McCarthy Motion

Although the court will not generally consider the weight of the evidence placed before the grand juiy, the court may examine the grand juiy proceedings to determine whether sufficient evidence was presented to support the issued indictments. Commonwealth v. Coonon, 428 Mass. 823, 825 (1999); McCarthy, 385 Mass. at 162. The quantum of evidence needed to indict is probable cause. Lataille v. District Court of E. Hampden, 366 Mass. 525, 532 (1974). The evidence presented to the grand jury must be sufficient to establish probable cause that the defendant committed the alleged *345 crime. Commonwealth v. Levesque, 436 Mass. 443, 452 (2002). “Probable cause requires sufficient facts to warrant a person of reasonable caution in believing that an offense has been committed . . .” Id. at 447. The grand juiy must be presented with sufficient facts to establish the identity of the defendant and “probable cause to arrest him.” McCarthy, 385 Mass. at 163.
The defendant argues that the indictments were not supported by probable cause because the witnesses’ testimony was based on hearsay and rumor rather than their personal knowledge.[1] While in certain “extraordinary circumstances,” hearsay testimony may be insufficient to establish probable cause to indict, such circumstances are not present here. Contrast Commonwealth v. LaVelle, 414 Mass. 146, 149 (1993) (extraordinary circumstance where prosecutor intentionally or knowingly deceived grand jury and impaired integrity of grand jury proceeding). Although the Commonwealth’s presentment included some hearsay testimony, it also contained testimony based on witnesses’ personal knowledge. See id. (although direct testimony preferred, indictment not subject to dismissal merely because based, even exclusively, on hearsay testimony). Specifically, Claudio and Tubbs testified as to their actual conversations with the defendant in which the defendant discussed the crimes and their circumstances.[2]
This court concludes that the testimony and evidence presented to the grand jury was sufficient to indict the defendant on all counts. For instance, Claudio and Tubbs’ testimony describing the defendant’s admissions, stated involvement in the crimes, and references to the motive was highly detailed and based on their direct conversations with the defendant. See LaVelle, 414 Mass. at 149. The fact that Claudio and Tubbs gave similar accounts of the defendant’s statements regarding the crime, motive, and weapon further support the indictments. See Commonwealth v. Brown, 55 Mass.App.Ct. 440, 446-47 (2002). Therefore, the evidence and testimony presented to the grand jury provided sufficient probable cause to support the indictments.

B. O’Dell Motion

A grand jury indictment may be dismissed if “the integrity of the grand jury proceeding was impaired by an unfair and misleading presentation ...” O’Dell, 392 Mass. at 446. To dismiss an indictment, the grand jury evidence must have been “given with knowledge that it was false or deceptive [and that] evidence must probably have been significant in the view of the grand jury and must have been presented with the intention of obtaining an indictment.” Commonwealth v. Mayfield, 398 Mass. 615, 621 (1986).

1. Leading Questions

The defendant argues that the prosecutor impaired the integrity of the grand jury proceedings by asking leading questions which evoked misleading testimony from witnesses such as Viust, Ms. Mendes, and Car-berry. The defendant argues that rather than offering their own information, the witnesses merely agreed with the prosecutor’s statements of fact which were not supported by independent witness testimony. Although leading questions may raise concern, courts do not dismiss indictments solely because the prosecutor used leading questions during a grand jury proceeding. Commonwealth v. Martinez, 420 Mass. 622, 625-26 (1995). Leading questions warrant dismissal only when they constitute intentional or egregious prosecutorial misconduct which impairs the integrity of the grand jury proceeding. Id. In this case, aside from the mere use of leading questions, there is no evidence that the questions were pervasive, misleading, or caused a substantial risk of miscarriage of justice. Id. (burden on defendant to show prejudice in grand jury proceedings).
The defendant also moves to dismiss under O'Dell arguing that during the Commonwealth’s presentment, the prosecutor suggested he had independent knowledge of the case. While a prosecutor should not convey independent knowledge of the case during closing argument (see, e.g., Commonwealth v. Ciampa, 406 Mass. 257, 265 (1989)), this principle does not apply during the examination of witnesses. Cf. Martinez, 420 Mass. at 625-26. During examination, the witnesses testify as to the factual correctness of the prosecutor’s statements, which avoids the potential for misleading testimony. In any case, as discussed above, the Commonwealth included in its presentment direct testimony from witnesses such as Claudio and Tubbs. The defendant’s argument therefore fails.

2. Character Evidence

The defendant also argues that the prosecutor introduced prejudicial character evidence which impaired the integrity of the grand jury proceedings. In particular, the defendant challenges Festog, Crockett, and Ms. Vacher’s testimony concerning the defendant’s reputation for using and selling drugs. He likewise challenges the testimony regarding Mendes’ reputation for being violent and “a little terror,” and for carrying a gun. Finally, the defendant argues the Commonwealth introduced improper character evidence of Ribeiro’s prior violent acts, of the “bad blood” between families, and the victim’s father’s involvement in a “cocaine ring.”
While the Commonwealth may not introduce evidence of specific bad acts or reputation to establish a defendant’s bad character, such evidence may be admissible for other purposes, such as to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, nature of relationship, or absence of mistake or accident. Commonwealth v. Helfant, 398 Mass. 214, 224-25 (1986); Commonwealth v. Tobin, 392 Mass. 604, 613 (1984).
In this case, the testimony concerning the defendant and co-defendants’ drug involvement was not *346 offered to show bad character, but to show motive. See Commonwealth v. O’Laughlin, 446 Mass. 188, 208-09 (2006). The testimony regarding prior drug disputes, the victim’s father’s involvement in a cocaine ring, and the defendant and co-defendants’ reputations for being drug users and dealers was offered to show drug dealing activity as the motive for the charged offenses. See id.; Commonwealth v. Mendes, 441 Mass. 459, 466 (2004). Likewise, testimony regarding “bad blood” between families was offered to show that hostile relationships may have spurred the crimes. See Mendes, 441 Mass. at 466. Moreover, testimony as to prior violent acts, tension between families, and Mendes’ reputation for being “crazy,” violent, and for carrying a gun was not offered to show bad character, but to show opportunity or intent. See id.; Commonwealth v. Julien, 59 Mass.App.Ct. 679, 686-87 (2003). It supported the Commonwealth’s theory that when the robbery became difficult, the defendant and codefen-dants resorted to killing the victim. Thus, the challenged testimony was not improper character evidence because it was offered to show motive, opportunity, or intent. Accordingly, use of the testimony did not impair the integrity of the grand jury proceedings.
This court therefore finds that the facts as laid out in the grand jury transcript, were not presented in an unfair or misleading manner and the defendant’s motion to dismiss based on O’Dell must be denied.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendant’s Motion to Dismiss the Indictments be DENIED.

 For example, the defendant argues that during the prosecutor’s examination, Murphy, Palma, and Crockett merely commented on casual rumors regarding the defendant.

 The defendant likewise moves to dismiss under McCarthy arguing that rather than volunteering specific information concerning the incidents, witnesses such as Viust, Ms. Mendes, and Carberry merely agreed with the prosecutor’s stated case theory. This argument fails, however, in light of the direct and specific testimony from other witnesses.