## RAYMOND EDWARDS, petitioner.

Norfolk. November 5, 2012. - March 7, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Practice, Civil,* Dismissal of appeal, Intervention, Judicial discretion. *Statute,* Construction. *Committee for Public Counsel Services. Witness,* Expert, Fee. *Evidence,* Sex offender, Expert opinion.

This court declined to dismiss the appeal of a judge's denial of a motion of the intervener, the Committee for Public Counsel Services (CPCS), for reconsideration of an indigent petitioner's posttrial motion seeking supplemental funds to pay the balance owed an expert who testified at his trial seeking release from commitment as a sexually dangerous person, even though, on the petitioner's appeal of his posttrial motion, a single justice of the Appeals Court had affirmed the reduced amount the judge awarded, where CPCS raised a substantial question of law concerning the authority of the judge to limit the amount of funds granted. [459-460]

This court concluded that where a judge determines that retention of an expert is reasonably necessary to provide an indigent petitioner seeking release from commitment as a sexually dangerous person under G. L. c. 123A, § 9, with as effective a case as if he were financially able to pay, the judge is bound by the hourly rate set by the Committee for Public Counsel Services (CPCS) under G. L. c. 211D, § 9 (*f*) and (*i*), but the judge has the authority to determine the reasonable amount the expert will be paid and, where an indigent petitioner seeks posttrial supplemental funds for that expert, the judge is not obliged to authorize the additional amount unless good cause is shown; thus, a judge did not abuse his discretion in reducing the amount of posttrial supplemental funds requested by such a petitioner, where the reduction was based not on the expert's hourly rate but on the expert's inefficient use of time. [460-466]

PETITION filed in the Superior Court Department on August 1, 2008.

Following transfer, the case was tried before *Douglas H. Wilkins*, J., and posttrial motions for supplemental funds and for reconsideration were considered by him.

The Supreme Judicial Court granted an application for direct appellate review.

*Ryan M. Schiff*, Committee for Public Counsel Services, for intervener.

*Anne M. Thomas,* Assistant Attorney General, for the Commonwealth.

GANTS, J. The primary issue presented on appeal is whether, in determining the reasonable compensation to be paid to an expert retained by an indigent petitioner seeking release from commitment as a sexually dangerous person under G. L. c. 123A, § 9 (§ 9), a judge is bound by the hourly rate determined for that expert by the Committee for Public Counsel Services (CPCS) under G. L. c. 211D, § 9 (*i*). We hold that a judge is bound by CPCS's determination of an hourly rate but still retains the authority to determine whether the total amount billed is reasonable by examining whether the services provided were reasonably necessary to provide the petitioner as effective a case as he would have had if he were financially able to pay. Because we conclude that the judge acted in accordance with these limits in determining the reasonable amount of the expert's fee, we affirm.

*Background.* In 2008, Raymond Edwards (petitioner), a person committed to the Massachusetts Treatment Center as a sexually dangerous person pursuant to G. L. c. 123A, § 12 (§ 12),[1] filed a petition seeking release from commitment under § 9.[2] After being found indigent, the petitioner filed a motion under G. L. c. 261, § 27C (§ 27C), inserted by St. 1974, c. 694, § 3, requesting that the judge authorize funds in the amount of $5,000 to retain the services of an "independent qualified examiner" to evaluate the petitioner and assist in the preparation of his case.[3]

---

[1]For a summary of the statutory scheme providing for civil commitment of sexually dangerous persons under G. L. c. 123A, see *Johnstone, petitioner,* 453 Mass. 544, 546-549 (2009).

[2]General Laws c. 123A, § 9, provides in relevant part:

"Any person committed to the treatment center shall be entitled to file a petition for examination and discharge once in every twelve months. . . . Unless the trier of fact finds that such person remains a sexually dangerous person, it shall order such person to be discharged from the treatment center."

[3]General Laws c. 261, § 27C (4), provides in relevant part:

"If the court makes a finding of indigency, . . . it shall not deny any request with respect to extra fees and costs if it finds the document, service or object is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay. The court shall not deny any request without

In making this request, the petitioner asserted that "[t]he cost of an independent expert examination, report, and testimony typically totals about $5,000" and "[r]arely" costs less than $4,000, and that an independent expert's preparation of a report "never" costs less than $2,500. The petitioner also noted that "[t]he minimal expenditure from the Commonwealth for a report and testimony from a single Qualified Examiner is $3,790." The motion did not identify the expert the petitioner wished to retain. The judge approved the motion for funds, but only in the amount of $2,500 "without prejudice to request additional funds for good cause shown."

With the funds approved by the judge, the defendant retained Dr. Daniel Kriegman, a licensed psychologist, who agreed to conduct a psychological evaluation of the petitioner, prepare a report, and testify at trial at the hourly rate approved by CPCS: $190 per hour for his "direct services" and sixty dollars per hour for travel. The petitioner did not move for the authorization of additional funds before Dr. Kriegman had devoted hours to the case that would have exhausted the $2,500 in funds authorized by the judge at his hourly rate set by CPCS. Instead, the petitioner waited until after Dr. Kriegman had exhausted the $2,500 approved in advance to move for the authorization of additional funds, ultimately asking for a supplemental authorization of $2,060.80 to compensate Dr. Kriegman for all his work, testimony, and travel in the case.[4] On May 6, 2011, the trial judge allowed the petitioner's motion "in the amount of $1,500,

first holding a hearing thereon; and if there is an appeal pursuant to section twenty-seven D following a denial, the court shall, within three days, set forth its written findings and reasons justifying such denial, which document shall be part of the record on appeal."

As defined in G. L. c. 261, § 27A, the phrase "[e]xtra fees and costs" includes "expert assistance."

[4]An entry in the Superior Court's docket for this case indicates that the petitioner filed a "supplemental motion for funds for psychological expert trial testimony (Expert Witness Dr. Kriegman)" on May 2, the day before trial began. However, a copy of this motion was not included in the record appendix in this appeal, nor was this motion mentioned by CPCS in its brief. Moreover, the May 2 order was not referenced by the judge in his May 9 order explaining his reasons for partially denying the defendant's May 6 motion for after-the-fact authorization of Dr. Kriegman's additional fees, and was not referenced by CPCS in its original motion to intervene and for reconsideration of the judge's May 9 order.

reflecting a reasonable amount, evidenced by the qualified examiner rates evidenced in the Commonwealth's February 9, 2009 letter to the [Supreme Judicial Court] in *Johnstone, petitioner*, [453 Mass. 544, 546-549 (2009)]."[5]

After the petitioner timely filed a notice of appeal from the denial of $560.80 of the requested authorization, the judge, in compliance with G. L. c. 261, § 27D (§ 27D), issued written findings and reasons for his denial of these funds on May 9.[6] In his memorandum of decision, the judge found that Dr. Kriegman had accurately reported the time he devoted to the case, but noted that the time he spent reviewing documents and the transcript of prior testimony "appear on the high side in a case where he previously examined the same petitioner and many of the same documents." The judge also found that the report prepared by Dr. Kriegman included "some material repeated from prior reports" and inferred "that this previous work permitted or should have permitted Dr. Kriegman to achieve some efficiencies in completing" the most recent report. He additionally noted that Dr. Kriegman's "travel time also seem[ed] slightly high" for the travel reported. The judge concluded that "with some additional efficiencies, a payment of $4,000 for all services would fully compensate the delivery of reasonable, fully effective and highly competent services to the petitioner in this case."

He also noted that this amount "is in line" with the compensation paid by the Department of Correction (department) to Forensic Health Services, Inc. (FHS), for a qualified examiner's evaluation and written report and 3.2 hours of testimony in a case under § 9. He stated that a person who was "financially able to pay" would not have paid Dr. Kriegman's bill without

---

[5]In *Johnstone, petitioner, supra*, the Department of Correction (department) reported in a letter to this court that the department contracts with Forensic Health Services, Inc. (FHS), for the provision of qualified examiner evaluations. Under the contract, the department pays $2,650 for an evaluation and written report where a petitioner challenges his commitment as a sexually dangerous person under G. L. c. 123A, § 9; $1,140 for one-half day of trial testimony; and $1,430 for a full day of trial testimony. The letter noted that these payments are made to FHS and do not reflect the fee that the qualified examiner actually receives.

[6]Under G. L. c. 261, § 27D, "[u]pon receipt of notice of appeal timely filed the clerk or register shall forthwith notify the judge or justice, who shall within three days set forth his written findings and reasons as provided in [G. L. c. 261, § 27C (4)]."

attempting to secure his services for the same price that the department pays FHS, which is greater than the amount the qualified examiners themselves receive. The judge suggested that his authority to determine "reasonable compensation" for the expert in this case derived from G. L. c. 123A, § 14 (*b*) (§ 14 [*b*]), inserted by St. 1999, c. 74, § 8, which provides in relevant part: "If the person named in the petition is indigent under [G. L. c. 211D, § 2], the court shall, upon such person's request, determine whether the expert or professional services are necessary and shall determine reasonable compensation for such services."

CPCS filed a combined motion to intervene and for reconsideration of the judge's May 9 findings and reasons. CPCS claimed that the judge effectively created his own compensation rate for Dr. Kriegman "by comparing the amount requested by the Petitioner for his expert to the amount paid to [FHS] for services performed by Qualified Examiners . . . under its contract with the [department]." CPCS argued that, in doing so, the judge had unlawfully intruded on its exclusive authority to set rates of compensation for such experts under G. L. c. 211D, § 9 (*i*), inserted by St. 1996, c. 151, § 474.[7] CPCS also argued that § 14 (*b*), which obliges the court to "determine reasonable compensation" for expert services, applies only to respondents whom the Commonwealth seeks civilly to commit as sexually dangerous persons under § 12, and does not apply to petitioners, such as Edwards, who already are civilly committed and seek discharge from commitment under § 9.

The judge allowed CPCS's motion to intervene but denied the motion for reconsideration. In doing so, the judge reaffirmed his prior decision regarding the reasonableness of the

[7]General Laws c. 211D, § 9, provides in relevant part:

"The [Committee for Public Counsel Services (CPCS)] shall establish standards for the public defender division and the private counsel division which shall include but not be limited to . . . (*f*) availability of expert witnesses to participating counsel; [and] (*i*) qualifications for [expert witnesses] and a range of rates payable for said services, taking into consideration the rates, qualifications and history of performance; provided, however, that such ranges may be exceeded with approval of the court. Payment of such costs and fees shall be in accordance with the provisions of [G. L. c. 261, §§ 27A-27G]."

expert's fee, noting that "nothing in [the previous orders] reduced the 'hourly rate.' " He also determined that, because § 9 is silent regarding compensation for experts retained by indigent petitioners, "[t]he more reasonable inference" is that the Legislature intended the court's authority under § 14 (*b*) — to determine whether expert services are "necessary" and, if so, to "determine reasonable compensation for such services" — apply equally to expert services sought by indigent petitioners under § 9.

On June 21, 2011, the petitioner's appeal from the judge's denial of his supplemental motion for funds was docketed with a single justice of the Appeals Court under § 27D. On June 23, the single justice denied the petitioner's appeal, concluding that the judge did not err in limiting the expert's compensation to $4,000, which was "reasonable under the circumstances."

Meanwhile, on June 13, CPCS filed its notice of appeal from the judge's denial of its motion for reconsideration, and the case was docketed in the Appeals Court on July 28. On December 21, we granted CPCS's application for direct appellate review. On January 24, 2012, the Commonwealth moved to dismiss CPCS's appeal, arguing that the single justice's decision is final and unreviewable under § 27D.[8]

*Discussion.* 1. *Motion to dismiss.* "It is settled that the decision of a single justice of the Appeals Court, affirming a judge's denial of a motion for funds, is final under G. L. c. 261, § 27D." *Gos* v. *Brownstein*, 403 Mass. 252, 254 (1988). See, e.g., *Singer* v. *Rosenkranz*, 453 Mass. 1012, 1012-1013 (2009) (when single justice of Appeals Court affirms trial court judge's denial of request for costs under § 27D, petitioner is "entitled to neither direct review by a panel of the Appeals Court nor extraordinary review under our superintendence power"); *Hunt* v. *Appeals Court*, 444 Mass. 460, 463 n.2 (2005) ("well-settled principle

---

[8]In relevant part, G. L. c. 261, § 27D, provides:

"In any case where the court denies a request for . . . payment by the commonwealth of fees and costs, pursuant to section twenty-seven C or any other provision of law, the applicant may take an appeal as hereafter provided. If the matter arises in the superior . . . court department[], the appeal shall be to a single justice of the appeals court at the next sitting thereof. . . . The court deciding the appeal may enter a stay or revoke an existing stay or other order, and its decision shall be final with respect to such request."

. . . that where a request for costs or fees is made and denied in a trial court and thereafter reviewed on appeal as provided in § 27D, the decision of the reviewing judge or court 'shall be final with respect to such request' "). If the issue on appeal were solely the reasonableness of the amount allowed by the judge to pay Dr. Kriegman for his expert services, we would agree with the Commonwealth that CPCS's appeal should be dismissed.

We have recognized, however, that there may be exceptions to this rule of finality in § 27D where there is a "reason why the plain meaning of the statute should not control its construction." *Gos* v. *Brownstein, supra* at 255. We granted direct appellate review and we deny the Commonwealth's motion to dismiss the appeal only because CPCS brought two separate and distinct claims in its motion for reconsideration: that the judge's decision was in violation of CPCS's exclusive authority to set hourly rates of compensation for experts under G. L. c. 211D, § 9 (*i*); and that the judge erred in applying the standard in § 14 (*b*) in determining the payment of expert services for an indigent petitioner in a § 9 sexually dangerous person discharge proceeding. These claims raise substantial issues of law that we have yet to decide and are distinct from the factual question routinely raised in a § 27D appeal to a single justice of the Appeals Court regarding the reasonableness of the judge's award of expert fees. See *Commonwealth* v. *Lockley*, 381 Mass. 156, 159-160 (1980) (deciding fee claim under § 27C despite failure to use "professedly exclusive" appellate procedure of § 27D in part "because the issue raised require[d] the interpretation of a statute never before construed by this court"). We consider the importance of deciding these distinct issues to constitute a sound "reason" to depart from the rule of finality under § 27D. See *Gos* v. *Brownstein, supra*. No one should confuse our reason for granting review in this case as an indorsement of a more general "end-run" around the statutorily imposed finality of single justices' decisions in § 27D appeals.

2. *Judicial authorization of expert fees for indigent parties.* Under the "indigency statute," "a party who has been found to be indigent may request funds for an expert, and the court 'shall not deny any request . . . with respect to extra fees and costs if

it finds the [expert] is reasonably necessary to assure the applicant as effective a prosecution, defense or appeal as he would have if he were financially able to pay.' " *Commonwealth* v. *Matranga*, 455 Mass. 45, 50 (2009), quoting G. L. c. 261, § 27C (4). "This standard is essentially one of reasonableness, and looks to whether a [party] who was able to pay and was paying the expenses himself, would consider the [services] sufficiently important that he would choose to obtain [them] in preparation for his trial." *Commonwealth* v. *Lockley*, 381 Mass. 156, 160 (1980).

A judicial determination under § 27C is two-pronged. First, the judge must determine whether retention of an expert is reasonably necessary to assure the indigent party as effective a case as he would have if he had the financial resources to afford to pay such an expert. See *Commonwealth* v. *Lockley, supra.* The principle embodied in the statute is equal justice under the law: an indigent party should have the financial resources necessary to mount as effective a case as a party who is not indigent. As we held in *Commonwealth* v. *Souza*, 397 Mass. 236, 241 (1986), quoting *Commonwealth* v. *Lockley, supra* at 160-161:

> "The test is not whether an item 'might conceivably contribute some assistance to the defense,' nor whether such an item 'would be acquired by a defendant who had unlimited resources,' but whether the item is 'reasonably necessary to prevent [the party] from being subjected to a disadvantage in preparing or presenting his case adequately in comparison with one who could afford to pay for the preparation which the case reasonably requires.' "

Once the judge determines that retention of an expert is reasonably necessary to present an effective case, the judge must authorize a reasonable amount to pay for the expert's services. The same principle of equal justice under the law applies to this determination. If an indigent party could afford to pay an expert, we would expect the party to be vigilant to ensure that the amount billed is reasonable; a reasonable party would not give his expert the equivalent of a "blank check" to pay an unlimited amount for his services. Where a party is indigent and an expert's fee is to be paid from public funds, the judge must be the arbiter of the reasonableness of the amount that may be charged. See

*Commonwealth* v. *Matranga, supra* at 51 (under § 27C, judge determines whether request for funds is reasonably necessary); *Commonwealth* v. *Clarke*, 418 Mass. 207, 213-214 (1994) (judge did not abuse discretion in concluding that party's request for funds was "excessive" where service to be provided by expert would have no impact on any relevant issue); *Commonwealth* v. *Lockley, supra* at 161 ("In making this determination under the statute, the judge may look at such factors as the cost of the item requested, the uses to which it may be put at trial, and the potential value of the item to the litigant"). See also G. L. c. 261, § 27F (when indigent defendant requests funds for expert services in advance of such services being provided, court may "order that the . . . service . . . shall be provided by an alternative means at lower or no cost, if the substitute thereby provided is substantially equivalent and the provision thereof does not materially impair the rights of any party").

The judge's role in these matters, however, is limited by statute. The judge may authorize CPCS to pay an expert an amount the judge finds reasonable, but under G. L. c. 211D, § 9 (f) and (i), CPCS determines the hourly billing rate for each expert based on the expert's field of expertise, qualifications, and history of performance,[9] and whether the work billed has been performed. CPCS also has sole discretion in disbursing funds up to the amount authorized by the judge. See *Commonwealth* v. *Matranga, supra.*

Generally, the attorney for the indigent party seeks authorization in advance for a reasonable amount of expert fees, sometimes before the attorney has retained an expert and learned the relevant billing rate approved by CPCS.[10] In evaluating such a request, a judge may consider the total amount billed for comparable

[9]The expert billing rates established by CPCS may be exceeded by order of a court, but not reduced. See G. L. c. 211D, § 9 (f), (i).

[10]We note that, in a criminal case, Rule 54 of the Rules of the Superior Court, at 1003 (LexisNexis 2012-2013), provides: "The court will not allow compensation for the services of an expert or expert witness for the defense . . . unless an order of the court or a justice, naming such expert or expert witness and authorizing his employment, was made before he was employed." Because the rule is limited to criminal cases, it does not apply to sexually dangerous person civil commitment cases, but prior authorization is nonetheless customary in those cases.

services by comparable experts and service providers in comparable cases, as well as the estimated amount of time needed to provide the reasonably necessary services. A judge, however, may not reduce the hourly rate of a retained expert below that set by CPCS in determining the reasonable amount of expert fees to authorize.

Where a party seeks funds to compensate an expert for services already rendered beyond the amount authorized, the party who retained the expert may make a supplemental request for funds, but the judge is not obliged to allow an additional amount unless there is good cause for exceeding the amount authorized in advance. In determining whether there is good cause, the judge may consider, among other factors, whether the additional services were reasonably necessary based on the circumstances of the case and whether the work was efficiently performed. See G. L. c. 261, § 27C (4); *Commonwealth* v. *Lockley, supra.* If the judge finds good cause, the judge may authorize payment of an additional amount based on the time spent on the reasonably necessary additional services, multiplied by the expert's CPCS-approved billing rate. See *Commonwealth* v. *Matranga, supra* at 50-51. Where a judge evaluates a supplemental request for funds to pay for expert services already provided, the judge must accept the expert's CPCS-approved hourly rate, and may not consider either total amounts billed by or hourly rates paid to comparable experts or similar service providers in determining either good cause or the supplemental amount to authorize, because doing so may effectively reduce the retained expert's hourly rate for reasonably necessary services below that set by CPCS.

For indigent individuals whom the Commonwealth seeks civilly to commit as sexually dangerous persons, the statute governing the payment of experts is not § 27C but, rather, G. L. c. 123A, § 14 (*b*), which provides that the court "shall . . . determine whether the expert or professional services are necessary and shall determine reasonable compensation for such services." Section 14 (*b*) was enacted in 1999, see St. 1999, c. 74, § 8, after both § 27C and G. L. c. 211D, § 9, but we discern nothing from either its language or its legislative history to suggest that it changes either the legal standard or the judicial role regarding the authorization of payment of expert fees for indigent individuals. When a judge authorizes the payment of

funds for expert services under § 27C (4), he is determining both "whether the expert or professional services are necessary" and the "reasonable compensation for such services," just as § 14 (*b*) demands. The canon of statutory construction holding that "the last expression of the Legislature[] controls" only applies "[w]hen a new provision conflicts with a prior statute." *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 215 (1997). Therefore, we need not decide whether § 14 (*b*) or § 27C applies to petitioners under § 9 who seek to be released from civil commitment as sexually dangerous persons, because the judicial determination is the same under both.[11]

We turn now to the judge's findings and rationale in this case to determine whether he unlawfully infringed on CPCS's statutory prerogative to set the hourly rate for experts retained by indigent parties or otherwise assumed an inappropriate judicial role in authorizing payment of an expert's fee. We conclude that he did not.

---

[11]Our conclusion that the legal standard and the judicial role regarding the authorization of payment of expert fees for indigent parties is the same under G. L. c. 261, § 27C (4), as under G. L. c. 123A, § 14 (*b*), may appear inconsistent with our dictum in *Commonwealth* v. *Matranga*, 455 Mass. 45, 51 n.10 (2009), where we stated:

> "To the extent that the plain language of G. L. c. 123A, § 14 (*b*), provides a different framework for the appointment and payment of experts in trials brought under G. L. c. 123A, than does the framework established by the interplay between the indigency statute and the CPCS statute, it does not affect our conclusion in this case . . . ."

In the *Matranga* case, the issue on appeal was whether a judge had the authority to order CPCS to withhold funds from an expert for services rendered in a subsequent case because of the expert's delay in appearing at trial in an earlier case, where payment in full had already been made in the earlier case with judicial authorization. In both the earlier and later cases, the motions for authorization of funds had referenced § 27C; no party made reference to § 14 (*b*), even though the expert was retained by respondents in sexually dangerous person civil commitment proceedings under G. L. c. 123A, § 12. In *Commonwealth* v. *Matranga, supra*, we stated that the failure to reference § 14 (*b*) was of no consequence because the inclusion of such a reference would not have changed our conclusion. We also noted that the language of § 14 (*b*) differs from the language of § 27C, but we did not analyze whether the different linguistic framework of the two statutes created a different legal standard or judicial role in the authorization of expert fees. Therefore, although we acknowledge the appearance of inconsistency, we do not find the above-quoted sentence in *Commonwealth* v. *Matranga, supra* at 51 n.10, to be actually inconsistent with our decision in this case.

In denying CPCS's motion for reconsideration, the judge stated that nothing in his orders reduced Dr. Kriegman's hourly rate, and his findings regarding the inefficiencies in Dr. Kriegman's provision of services support this statement. The judge found that Dr. Kriegman had been less efficient in preparing his report than he should have been because he devoted more time than necessary to reviewing documents and transcripts. In so finding, the judge in effect determined that at the hourly rate set by CPCS, Dr. Kriegman could have provided for $4,000 the services reasonably necessary to "assure the applicant as effective a [case] as he would have [had] if he were financially able to pay." G. L. c. 261, § 27C (4).

We acknowledge that the judge may have erred in considering the contractual rates paid to FHS for the compensation of qualified examiners in denying in part the petitioner's motion for supplemental funds to pay an expert for services already provided. A judge properly may consider the total amounts paid to comparable experts or service providers for comparable work in deciding the amount of funds to authorize *before* the expert provides the services, because reliance on these comparables will not directly or indirectly change the expert's CPCS-approved hourly rate. Where an expert has yet to be chosen, the amount of funds authorized based on these comparables may affect the party's selection of an expert, because an expert with a lower CPCS-approved hourly rate will be able to devote more hours to a case without exceeding the amount of funds authorized. Where an expert has already been chosen, the judge's advance authorization of funds based on these comparables may limit the number of hours the expert may spend on the case before seeking supplemental authorization. But *after* an expert provides the services, if a judge were to rely on such comparables in denying a supplemental request for funds, the judge may deny earned compensation to an expert who has efficiently provided reasonably necessary services solely because his hourly rate is above that of comparable experts, effectively reducing the hourly rate of that expert below the expert's hourly rate as set by CPCS.

We are satisfied, however, that the risk posed here by the judge's consideration of the FHS contractual rates was not realized, because the judge made specific findings regarding the

inefficiencies in the services Dr. Kriegman provided. The judge here authorized less than the petitioner sought because he concluded that Dr. Kriegman devoted more hours than were reasonably necessary to the preparation of the report, not because his hourly rate was higher than that of comparable experts. Therefore, the judge did not intrude on CPCS's statutory role in setting hourly rates for experts retained by indigent petitioners. Rather, he exercised his appropriate judicial role in determining whether there was good cause to authorize supplemental payment beyond the initial amount authorized and, having implicitly so found, determining whether the additional amount of time spent by the expert was reasonably necessary. We do not consider whether the judge abused his discretion in his determination of the amount of time that was reasonably necessary for Dr. Kriegman to prepare his report. The single justice of the Appeals Court has already concluded that the judge did not abuse his discretion in this regard, and under § 27D that decision is final.

*Conclusion.* The order denying the motion for reconsideration is affirmed.

*So ordered.*