NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11776

WILLIAM F. READE, JR.  vs.  SECRETARY OF THE COMMONWEALTH & others.[1]


Barnstable.     May 4, 2015. - September 3, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Practice, Civil, Costs.  Indigent.  Veteran.  Statute, Construction.



Civil action commenced in the Superior Court Department on June 10, 2013.

A hearing on a request for indigency status and a waiver of fees and costs was had before Robert C. Rufo, J.

Leave to prosecute an interlocutory appeal was allowed in the Appeals Court by James R. Milkey, J.  The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Emily B. Kanstroom (Meredith M. Leary & Robert M. Buchholz with her) for the plaintiff.
Daniel P. Sullivan, Special Assistant Attorney General (Gwen A. Werner, Special Assistant Attorney General, with him) for the intervener.

---

[1] The Attorney General; Office of Court Management of the Trial Court, intervener.

Georgia Katsoulomitis & Phillip Kassel, for Massachusetts Law Reform Institute, Inc., & another, amici curiae, submitted a brief.

CORDY, J.  Since 1974, the Legislature has demonstrated a commitment to ensuring that the doors of the Commonwealth's courts will not be closed to the poor.  This commitment is embodied in the so-called Indigent Court Costs Law, G. L. c. 261, §§ 27A-27G (§§ 27A-27G), which creates a mechanism for indigent persons to obtain waivers or reductions of court fees and other costs incurred during litigation.  The statutory scheme defines "[i]ndigent persons" to include those with income below the poverty line; those who demonstrate that the payment of fees and costs would create a hardship; and those who receive "public assistance" under certain programs, including "veterans' benefits programs."  G. L. c. 261, § 27A.  The question presented in this appeal is whether a litigant such as the plaintiff, who receives Federal veterans' benefits and a Massachusetts property tax abatement that are not dependent on his economic circumstances, is considered indigent under § 27A and therefore entitled to a waiver despite having ample financial resources to pay court fees and costs.[2]

---

[2] By order of this court, all information submitted in an affidavit of indigency is confidential unless otherwise stated in a specific court order.  Accordingly, the affidavits of indigency and accompanying papers submitted in connection with this case were impounded.  See S.J.C. Rule 1:15 (2) (b), as

We conclude that the statute was not intended to provide for a waiver under these circumstances. The history of the statute reveals an unbroken chain of legislative intent to limit the definition of indigent to persons whose limited financial resources prevent them from obtaining meaningful access to the Commonwealth's courts. In light of the statute's history and purpose, we interpret the phrase "public assistance under . . . veterans' benefits programs" as referring only to the Massachusetts need-based programs for veterans presently administered pursuant to G. L. c. 115, § 5. Because the plaintiff does not participate in such a program, his request for a waiver of fees and costs was properly denied.[3]

1. Background. The plaintiff, William Reade, is a retired lieutenant colonel of the Unites States Army Reserve and a resident of Massachusetts. In 1978, the Federal Veterans' Administration determined that Reade suffered a ten per cent

---

appearing in 401 Mass. 1301 (1988) ("Unless otherwise ordered by the appellate court . . . material impounded in the trial court shall remain impounded in the appellate court"). Yet, because some of the information contained in those materials is critical to the resolution of this appeal, we now lift the order of impoundment to the extent necessary to explain our decision today. See Adams v. Adams, 459 Mass. 361, 362 n.1 (2011), S.C., 466 Mass. 1015 (2013).

[3] We acknowledge the amicus curiae brief submitted by the Massachusetts Law Reform Institute, Inc., and Mental Health Legal Advisors Committee.

disability as a result of an injury to his left shoulder and elbow incurred in connection with his military service. As a result of his injury, Reade receives a monthly disability payment pursuant to 38 U.S.C. §§ 1110, 1114 (2012), as well as a partial property tax abatement pursuant to a Massachusetts program for resident disabled veterans, see G. L. c. 59, § 5, Twenty-second. His eligibility for the disability payments and property tax abatement is not dependent on his income or resource levels.[4]

In 2013, Reade commenced an action in the Superior Court, alleging various constitutional violations with respect to the presidential ballot. Along with his civil complaint, Reade filed an affidavit of indigency pursuant to § 27B,[5] in which he

---

[4] General Laws c. 59, § 5, Twenty-second, provides for a partial property tax abatement for certain resident veterans "who, as a result of disabilities contracted while in the line of duty, have a disability rating of ten per cent or more as determined by the Veterans Administration or by any branch of the armed forces." The abatement applies to the veteran's domicile in "the amount of [$2,000] of [its] assessed taxable valuation or the sum of $400, whichever would result in an abatement of the greater amount of actual taxes due." Id. In contrast, G. L. c. 59, § 5, Eighteenth, exempts from taxation "[a]ny portion of the estates of persons who by reason of age, infirmity and poverty, or financial hardship resulting from a change to active military status, not including initial enlistment are in the judgment of the assessors unable to contribute fully toward the public charges." Reade does not purport to receive the more generous need-based exemption afforded by clause Eighteenth.

[5] General Laws c. 261, § 27B, provides, in relevant part, that "[u]pon or after commencing or answering to any civil,

requested a waiver of normal court fees and litigation costs,[6] as well as extra fees and costs.[7]  As grounds, Reade indicated in

---

criminal or juvenile proceeding or appeal in any court, . . . any party may file with the clerk an affidavit of indigency and request for waiver, substitution or payment by the commonwealth of fees and costs upon a form prescribed by the chief justice of the supreme judicial court and in accordance with the standards set forth in [§§ 27C-27F], inclusive, and sworn to under oath by the affiant."  A person qualifies as "[i]ndigent" under the statutory scheme if he or she:

> "(a) receives public assistance under aid to families with dependent children, program of emergency aid for elderly and disabled residents or veterans' benefits programs or who receives assistance under Title XVI of the Social Security Act or the medicaid program, 42 U.S.C.A. 1396, et seq.;

> "(b) [has an] income, after taxes, . . . 125 per cent or less of the current poverty threshold established annually by the Community Services Administration pursuant to section 625 of the Economic Opportunity Act, as amended; or

> "(c) . . . is unable to pay the fees and costs of the proceeding in which he is involved or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter and clothing . . . ."

G. L. c. 261, § 27A.

[6] "Normal fees and costs" are those that "a party normally is required to pay in order to prosecute or defend the particular type of proceeding in which he is involved," including, for example, "filing or entry fees"; "fees and related costs for service of process"; "fees and costs for the issuance or service of a subpoena and witness fees for trial or deposition; jury trial fees; removal fees; costs assessed in a bill of costs"; and "fees for the issuance of an injunction, restraining order, writ or other process."  G. L. c. 261, § 27A.

[7] "Extra fees and costs" are those that "result when a party employs or responds to a procedure not necessarily required in the particular type of proceeding in which he is involved,"

his affidavit that his income was at or below the poverty threshold for indigency.[8]  See G. L. c. 261, § 27A ("Indigent" definition [b]).  Reade also filed a letter in which he detailed his various sources of income.[9]  A clerk referred the affidavit to a judge because Reade's stated income suggested that he was not indigent and because Reade requested a waiver of extra fees and costs, which may be approved only by a judge.  See G. L.

including, for example, "the cost of transcribing a deposition, expert assistance and appeal bonds and appeal bond premiums." G. L. c. 261, § 27A.

[8] In his affidavit, Reade indicated a household income of approximately $3,400 per month.

[9] In his letter, Reade indicated that he received "SSI." Assuming that this was a reference to Supplemental Security Income, the program set forth in Title XVI of the Social Security Act, Reade may have qualified as indigent under G. L. c. 261, § 27A ("Indigent" definition [a]).  Whether he actually received such assistance is a matter of considerable doubt, however, given his stated income and resource levels.  See Roe v. Rosencratz, 71 Mass. App. Ct. 901, 901 (2007) ("neither the statute nor the [Instructions to Courts on the Administration of the Indigency Court Costs Law (Indigency Instructions)] requires the clerk or the judge to ignore other court filings by the plaintiff that raise 'significant question[s]' regarding the indigency of the plaintiff").  See also 20 C.F.R. § 416.1205 (2014) (Supplemental Security Income resource limit for individual with spouse is $3,000).  In any event, Reade does not make this argument on appeal, and we consider it waived.  See Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 722 n.7 (2013); Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).  If Reade does, in fact, receive Supplemental Security Income, he is free to file a new affidavit so reflecting.  See G. L. c. 261, § 27B ("indigent party may subsequently file one or more supplementary affidavits requesting the waiver, substitution or payment by the commonwealth of fees and costs not previously granted at any time while the case is still pending . . .").

c. 261, § 27C (3).  After holding a hearing, the judge denied the waiver on the ground that Reade's income exceeded the poverty threshold for indigency.  A single justice of the Appeals Court affirmed.

Reade then filed a second affidavit of indigency, again requesting a waiver of both normal and extra fees and costs. This time, however, Reade claimed indigency on the ground that he was unable to pay the fees and costs without depriving himself or his dependents of the necessities of life.  See G. L. c. 261, § 27A ("Indigent" definition [c]).  He also submitted the required supplement to the affidavit in which he detailed his assets, income, and expenses.[10]  A clerk referred the affidavit to the same judge, again because of Reade's stated income and the request for extra fees and costs.  The judge held a new hearing and, on the basis of Reade's available assets, determined that he was not indigent and again denied the waiver. A single justice of the Appeals Court affirmed.

Undeterred, Reade filed a third affidavit of indigency seeking a waiver of normal and extra fees, claiming indigency on the ground that he received public assistance in the form of veterans' benefits.  See G. L. c. 261, § 27A ("Indigent"

---

[10] In the supplement to the affidavit, Reade declared after tax income in excess of $40,000 per year, substantial balances in his checking and savings accounts, and more than $200,000 of equity in his house.

definition [a]).  Reade included documents demonstrating his receipt of the property tax abatement for Massachusetts veterans and the monthly disability payments from the Veterans' Administration.  A clerk again referred the affidavit to the same judge, this time for the additional reason that the affidavit was not "regular and complete on its face."  The judge held another hearing and, after reviewing all three affidavits, concluded that Reade was not indigent because he had the ability to pay the normal and extra fees and costs.  A single justice of the Appeals Court granted Reade leave to file an interlocutory appeal, observing that whether a judge has authority to deny indigency status to a person receiving "veteran's benefits" was a question with "broad policy ramifications for the administration of justice."  Reade filed the appeal, the Appeals Court allowed the Office of Court Management of the Trial Court to intervene, and we transferred the case to this court on our own motion.

2.  Discussion.  The Indigent Court Costs Law entitles an indigent person to a waiver or reduction of certain fees and costs incurred during litigation.  G. L. c. 261, § 27C.  Under § 27A, first definition, a person is "indigent" if, inter alia, he or she receives "receives public assistance under . . . veterans' benefits programs."  Reade argues that because he receives Federal disability payments and the Massachusetts

property tax abatement for veterans, the plain language of the statute compels the conclusion that he is indigent and therefore entitled to a waiver. We disagree.

"[I]t is a well-established canon of statutory construction that a strictly literal reading of a statute should not be adopted if the result will be to thwart or hamper the accomplishment of the statute's obvious purpose, and if another construction which would avoid this undesirable result is possible." Watros v. Greater Lynn Mental Health & Retardation Ass'n, 421 Mass. 106, 113 (1995). "The legislative intent in enacting a statute is to be gathered from a consideration of the words in which it is couched, giving to them their ordinary meaning unless there is something in the statute indicating that they should have a different significance; the subject matter of the statute; the preexisting state of the common and statutory law; the evil or mischief toward which the statute was apparently directed; and the main object sought to be accomplished by the enactment." Meunier's Case, 319 Mass. 421, 423 (1946). See Commonwealth v. De'Amicis, 450 Mass. 271, 273-274 (2007) (interpreting indigent court costs statute in light of purpose and history). See also Edwards, petitioner, 464 Mass. 454, 461 (2013) (same); Underwood v. Appeals Court, 427 Mass. 1012, 1013 (1998) (same). With these principles in mind,

we turn to the legislative history of the statute with an aim toward gleaning the Legislature's intent in enacting it.

The seeds for the Indigent Court Costs Law were planted in 1970 by the Massachusetts Law Reform Institute, Inc. (MLRI), a nonprofit legal advocacy group dedicated to promoting systemic legal changes that benefit the poor. Rodgers, Rap-ups of a Retired Reformer: Stories About How Legal Services Advocates Transformed the Laws for Poor People in Massachusetts 81 (2013). MLRI's efforts were focused on increasing access to the courts for poor people who could not afford to pay filing fees and other litigation costs. Id. These efforts eventually blossomed into 1974 Senate Doc. No. 1099, An Act to relieve indigent litigants of burdensome court costs in civil and criminal proceedings. See Rodgers, supra at 81. The proposed bill defined a litigant as "[i]ndigent" where:

> "(1) he receives any federal, state or local public
> assistance, including medical assistance or any rental
> subsidy, or (2) his net income does not exceed the limits
> set out in [§ 27E], or (3) he is otherwise indigent because
> wholly unable to pay the expected total of the fees and
> costs of the proceeding in which he is involved, or is
> unable to do so without depriving himself or his dependents
> of the necessities of life, including shelter, food and
> clothing."

1974 Senate Doc. No. 1099, § 2. The legislative purpose statement included in the bill made clear that the legislation was focused on providing aid to the poor:

"The General Court hereby finds and declares that many litigants in both civil and criminal cases are unable to secure due process of law and equal protection of the laws in the courts of Massachusetts by reason of being too poor to afford the fees and costs (not including attorneys fees) incident to such litigation.

"Therefore, the purpose of this act is to provide for the absorption, payment or obviation of such fees and costs, initially by the counties and ultimately by the Commonwealth.

"This Act shall be given a liberal construction to the end that its broad and humane purposes may be served."

1974 Senate Doc. No. 1099, § 1.

The Senate bill was ultimately superseded by 1974 House Doc. No. 5859, which trimmed the definition of indigent to a person who "is unable to pay the fees and costs of the proceedings in which he is involved, or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter and clothing," making it even clearer that the statute was only intended to provide waivers to litigants who could truly not afford to pay litigation costs. Under this version of the statute, which was enacted into law by St. 1974, c. 694, § 3, Reade would not have qualified as indigent.

The Senate's version was resurrected in the 1980 amendments to § 27A,[11] which changed the definition of "[i]ndigent" to a person who:

> "(a) . . . receives public assistance under the Massachusetts Aid to Families with Dependent Children, General Relief or Veteran's Benefits programs or receives assistance under Title XVI of the Social Security Act or the Medicaid program, 42 U.S.C. 1396, et seq.;
>
> "(b) [has] income, after taxes, . . . [125] per cent or less of the current poverty threshold annually established by the Community Services Administration pursuant to [§ 625] of the Economic Opportunity Act, as amended; or
>
> "(c) . . . is unable to pay the fees and costs of the proceeding in which he is involved, or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter and clothing."

St. 1980, c. 539, § 5.[12]  Reade's position is that the 1980 amendments reflected an intention by the Legislature to broaden the definition of indigent to include a person who receives any type of veterans' benefit, regardless of the origin of or reason for that benefit.  This position is not sustainable.

---

[11] The amendments were proposed in 1980 Senate Doc. No. 2260.

[12] As can be seen, the 1980 definition of indigent is reminiscent of the original proposed definition found in 1974 Senate Doc. No. 1099, which, in light of the legislative purpose statement, cannot be interpreted reasonably as applying to anything other than needs-based benefits.  An important difference between those two versions, however, was in the language of the first definition of indigent, which in the 1974 version applied broadly to a person receiving "any federal, state or local public assistance."  See id.at § 2.  In contrast, the 1980 version listed five specific public assistance programs.  See St. 1980, c. 539, § 5.

The 1980 definitional changes may be best understood in the context of the amendments as a whole, particularly in tandem with the changes made to § 27C.  Prior to 1980, relief from court fees and costs had to be approved by a judge.  The 1980 amendments to § 27C altered this practice by directing the clerk to grant relief "forthwith" where a litigant files an affidavit that "appears regular and complete on its face and indicates that the affiant is indigent, as defined in [§ 27A], and requests a waiver, substitution or payment by the commonwealth, of normal fees and costs."  St. 1980, c. 539, § 7.  Empowering the clerk to grant relief clearly was intended to expedite the waiver process in cases involving routine costs and expenses. Without the definitional changes to § 27A, the clerk still would have been required to engage in the cumbersome process of determining whether the payment of fees and costs would deprive a litigant of the "necessities of life."  The definitional changes circumvented unnecessary delays by capitalizing on preexisting systemic determinations of financial need in the form of income-poverty guidelines and means-tested public assistance programs.

The first definition of indigent set out in the 1980 statute created two distinct categories of benefits:  "public assistance" under three listed programs, and "assistance" under two other listed programs.  St. 1980, c. 539, § 5.  This

structure is significant, as "[w]ords grouped together in a statute must be read in harmony, and we are not free to interpret [one provision] in a way that makes it exceptionally broader than its neighbors." Franklin Office Park Realty Corp. v. Commissioner of the Dep't of Envtl. Protection, 466 Mass. 454, 462 (2013). The first category began with the word "Massachusetts," followed by three programs corresponding to statutes located in the Public Welfare section of the General Laws: G. L. c. 115 (veterans' benefits); G. L. c. 117, repealed by St. 1991, c. 255, § 3 (general relief); and G. L. c. 118 (aid to families with dependent children). Importantly, each of the three statutes -- consistent with the original intent of § 27A -- premised the receipt of public assistance on financial need.[13] That the Legislature was referring to those specific statutes in § 27A is reinforced by other instances in which the Legislature has referenced them in concert. See, e.g., An Act providing

---

[13] See St. 1936, c. 413 ("before so aiding any parent the board of public welfare . . . shall make an immediate and careful inquiry, including the resources of the family and the ability of its other members, if any, to work or otherwise contribute to its support"); St. 1961, c. 317 ("such [veterans'] benefits shall not be paid to any person who is able to support himself or who is in receipt of income from any source sufficient for his support"); St. 1971, c. 908 ("[general relief] aid furnished shall be determined by the department on the basis of the circumstances surrounding each application [and] shall be sufficient to maintain an adequate standard of living for the poor and indigent applicant and his immediate family who are eligible").

cost-of-living adjustments for recipients of aid to families with dependent children, general relief and veterans' benefits, St. 1974, c. 623 (amending G. L. cc. 115, 117, and 118).[14]

Further, with respect to the second category, the Legislature included only Federal programs and referred to those programs specifically by statute. Had the Legislature intended to premise qualification for indigency under § 27A on the receipt of Federal veterans' benefits, we infer that it would have done so in a manner consistent with its treatment of other Federal programs in the same section of the statute. See Commonwealth v. Williamson, 462 Mass. 676, 681 (2012), quoting Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 316 (1991) ("Statutes should be read 'as a whole to produce an internal consistency'"). It is also telling that both of the Federal statutes referred to in the amended version of § 27A -- like the aforementioned Massachusetts statutes -- made the receipt of benefits contingent on financial need,[15] suggesting a

---

[14] See also St. 1978, c. 367, § 54B ("An advisory committee on the implementation of a wage reporting system is hereby created consisting of . . . three persons to be appointed by the chairman of the state welfare advisory board one of whom shall be a recipient of aid to families with dependent children; one of whom shall be a recipient of general relief; and one of whom shall be a recipient of veterans' benefits").

[15] See 42 U.S.C. § 1381a (2012) ("Every aged, blind, or disabled individual who is determined under part A of this subchapter to be eligible on the basis of his income and resources shall . . . be paid benefits" [emphasis added]); 42

continuation of legislative intent to restrict the meaning of "indigent" to persons with limited financial resources.[16] St. 1980, c. 539, § 5. In view of the foregoing, we conclude that the 1980 amendment tying indigency to the receipt of "Veteran's Benefits" was intended to encompass only the receipt of Massachusetts need-based veterans' benefits under G. L. c. 115, § 5. St. 1980, c. 539, § 5. Because Reade did not receive such benefits, he would not have qualified as indigent under the 1980 version of the statute.

The next relevant modification to the statute occurred in 2000 in connection with a bill introduced pursuant to G. L. c. 3, § 53 (§ 53). Section 53 allows counsel to the Senate and House of Representatives, see G. L. c. 3, § 51, to make recommendations for the "repeal of such statutory provisions as have become obsolete or the reasons for the enactment of which have ceased to exist," "rejection of superfluous words, [and] condensation of all circuitous, tautological and ambiguous phraseology into as concise and comprehensive a form as is

---

U.S.C. § 1396-1 (2012) ("For the purpose of enabling each State . . . to furnish [1] medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services" [emphasis added]).

[16] Similarly, S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993) (assignment of counsel to indigent criminal defendants), defines the term "[i]ndigent" to include, inter alia, a person receiving "poverty related veterans' benefits."

consistent with the full and clear expression of the will of the general court."  In other words, linguistic changes made pursuant to § 53 are generally of a technical, rather than substantive, character.  The changes made to § 27A in 2000 are no exception.  See St. 2000, c. 313, § 46.

The 2000 bill, entitled, "An Act making certain corrective changes in certain general and special laws," suggested several linguistic changes to § 27A, including the removal of the word "Massachusetts."  See 2000 Senate Doc. No. 2212.  The word "Massachusetts" was likely omitted because it was superfluous.  As observed above, where the Legislature referred to a non-Massachusetts program in § 27A, it did so explicitly by including a statutory citation.  The omission of such a citation when referring to the other programs sufficed to indicate their Massachusetts origins.  See G. L. c. 3, § 53.  See generally Hartford Ins. Co. v. Hertz Corp., 410 Mass. 279, 283 (1991) ("As a general rule, when the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present").[17]

---

[17] The Legislature has a long history of revising statutes to remove superfluous language.  See, e.g., Commonwealth v. Dana, 2 Met. 329, 339 (1841) ("One of the objects of the revision of our laws was to condense them by change of phraseology, and the rejection of all superfluous words, which has been frequently done, where there is evidently no change of

Other modifications to § 27A were prompted by inaccuracies in the existing program descriptions.[18] The final language choices in § 27A reflect an intention to conform the text to the language of the specific statutes referenced therein, which is consistent with the technical nature of the modifications contemplated by § 53.  See Arthur A. Johnson Corp. v. Commonwealth, 306 Mass. 347, 353 (1940), quoting Main v. Plymouth County, 223 Mass. 66, 69 (1916) ("It is a familiar principle of statutory construction that mere verbal changes in the revision of a statute do not alter its meaning and are construed as a continuation of the previous law").

At oral argument, Reade pointed out the Commonwealth has a long tradition of providing preferential treatment to veterans.

_____

meaning by the change of language or the omission of the superfluous parts of the former statutes").

[18] For example, the term "Veterans' Benefits," as it is spelled in G. L. c. 115, previously had been spelled incorrectly as "Veteran's Benefits."  The initial draft of the bill contained an oversight, however, insofar as it retained the reference to the obsolete general relief statute, G. L. c. 117, which had been superseded by G. L. c. 117A.  See. St. 1991, c. 255, § 4.  Correspondence from the Department of Transitional Assistance (department) while the "draft technical correction bill" was still in committee pointed out that "the statutory definition presently, and as amended, incorrectly cites two department programs."  The DTA then suggested that the term "General Relief" be replaced with "Emergency Aid to the Elderly, Disabled and Children."  This suggestion was partially adopted by way of a handwritten modification to the bill, replacing the term "General Relief" with "program of emergency aid for elderly and disabled residents," which is the language used in G. L. c. 117A, § 1.

That is undoubtedly true, and where the Legislature has indicated such an intention, we have not hesitated to recognize the legitimacy of the public interest at stake. See, e.g., G. L. c. 31, § 26 (affording gradations of civil service priority based on veteran and disabled veteran status); Smith v. Director of Civil Serv., 324 Mass. 455, 461 (1949) ("it is open to the Legislature to say that, whereas all veterans may be preferred because of their service in uniform, the public interest is served by additionally preferring those who have incurred disability in the course of their service"). However, the Indigent Court Costs Law did not originate as a veterans' preference law and, as the foregoing legislative history demonstrates, the "principle embodied in the statute," as it stands today, remains "equal justice under the law:  an indigent party should have the financial resources necessary to mount as effective a case as a party who is not indigent." Edwards, petitioner, 464 Mass. at 461.  Reade's argument, that the receipt of any veterans' benefits renders a litigant indigent, is incompatible with this principle because it would allow waivers for individuals who already have ample financial resources to afford court fees and other litigation costs.  See Underwood, 427 Mass. at 1013.  We decline to construe § 27A in a manner that is plainly inconsistent with its central purpose,

notwithstanding the susceptibility of the statute's plain language to such a construction. See Watros, 421 Mass. at 113.

Rather, we continue to read § 27A, "Indigent" definition (a), as referring to the five specific, need-based public assistance programs -- three of which derive from Massachusetts law and two which derive from Federal law -- that are listed on the form affidavit of indigency prescribed by the Chief Justice of this court pursuant to § 27B. This includes the "Massachusetts Veterans Benefits" program, which is presently codified at G. L. c. 115, § 5. Accordingly, Reade's receipt of Federal disability payments and the Massachusetts property tax abatement for veterans, neither of which is contingent on financial need, did not render him a "person who receives public assistance under . . . veterans' benefits programs" within the meaning of § 27A ("Indigent" definition [a]). Therefore, Reade is not indigent and his request for a waiver of fees and costs was properly denied by the judge.

The question remains, however, whether Reade's third request for a waiver of normal fees and costs even should have been referred to a judge. Reade contends that the clerk was required to grant the request forthwith, without further inspection of the circumstances, because his affidavit was (i) regular and complete on its face; (ii) indicated that he was indigent by virtue of his selection of "Massachusetts Veterans

Benefits" on the form affidavit; and (iii) requested a waiver of normal fees and costs. We conclude that the clerk was correct to refer the affidavit to a judge.

The "Instructions to Courts on the Administration of the Indigent Court Costs Law" of this court direct the clerk to refer the affidavit to a judge where there is a "significant question about whether the applicant is indigent." Here, Reade did not simply select "Massachusetts Veterans Benefits" on the form affidavit. Rather, he attached a series of documents indicating that the Massachusetts benefit he was contemplating was a property tax abatement for disabled veterans, which, as discussed above, is not the benefit contemplated by the form. Thus, considered as a whole -- i.e., the form affidavit along with the attachments -- Reade's affidavit created ambiguity as to whether he received veterans benefits within the meaning of the first definition of "Indigent" in § 27A.[19] Moreover, the

_____

[19] Nonetheless, we reject the argument of the Office of Court Management of the Trial Court that Reade's affidavit was "irregular" on its face because it contained an excessive estimate of his costs. The form affidavit instructs the applicant to "indicate your best guess as to the cost, if known." The Indigency Instructions recognize that "[m]ost applicants will not know the actual costs of many of these services. Therefore, courts should approve otherwise appropriate applications for waiver or [S]tate payment and insert in the approval the actual or estimated amount of the fee or service, as it is known to the court." In other words, where the only defect in a qualifying affidavit is an incorrect estimation of normal fees and costs, the clerk should approve the request at the correct amount.

clerk was entitled to consider Reade's past affidavits pursuant to Roe v. Rosencratz, 71 Mass. App. Ct. 901, 903 (2007) ("previous court filings by the plaintiff for payment of entry fees and costs, in which she had represented that she had significant assets . . . justified further consideration by the clerk and referral to a judge").  Those affidavits reflected considerable income and assets, casting additional doubt on Reade's claim that he received the need-based benefits afforded by the Massachusetts Veterans' Benefits program, G. L. c. 115, § 5.  In view of these significant questions about Reade's receipt of veterans' benefits, we cannot say that the clerk erred in referring the matter to the judge.[20]

---

[20] Section 27C (3) also directs the clerk to refer the affidavit to a judge where the applicant requests not only normal fees and costs, but also extra fees and costs.  This was, therefore, another ground on which Reade's affidavit was properly referred to the judge.  The intervener goes one step further, however, by arguing that even if Reade had received veterans' benefits within the meaning of § 27A ("Indigent" definition [a]), once the affidavit was before the judge on the request for extra fees and costs, the judge had discretion under § 27C (3) to deny indigency status based on Reade's economic circumstances.  Although the judge in this case appears to have agreed, we do not.  If Reade had, in fact, received Massachusetts veterans' benefits within the meaning of the first definition of "[i]ndigent" under § 27A, he would be indigent and entitled to relief.  See G. L. c. 261, § 27C (4) ("If the court makes a finding of indigency, it shall not deny any request with respect to normal fees and costs . . .").  Under those circumstances, the judge's discretion would be limited to assessing Reade a reasonable partial payment as a substitute for the waiver.  See id. at § 27C (6).  See also Underwood v. Appeals Court, 427 Mass. 1013, 1013 (1998) ("Requiring litigants

3.  Conclusion.  For the reasons set forth herein, we conclude that the "veterans' benefits" program described in the first definition of "[i]ndigent" under G. L. c. 261, § 27A, refers to the need-based Massachusetts veterans' benefits program presently administered pursuant to G. L. c. 115, § 5. Reade does not receive such benefits and therefore he is not indigent on that ground.  Consequently, we affirm the judge's decision denying Reade's request for a waiver of normal and extra court fees and litigation costs.

So ordered.

---

to pay a reasonably reduced filing fee, set within their limited financial means, serves the important dual purpose of providing equal access to the courts while simultaneously screening out frivolous claims").